961 F.2d 359
 35 Fed. R. Evid. Serv. 532
 William C. HYGH, Plaintiff-Appellee-Cross-Appellant,
v.
William JACOBS, Defendant-Appellant-Cross-Appellee,
Gerald Cosenza, The Village of Catskill, New York, Charles
Adsit, and John Doe 1 Through 4, Defendants.
 Nos. 1782-1784, Dockets 91-7317, 91-7331, and 91-7403.
 United States Court of Appeals, Second Circuit.
 Argued July 23, 1991.
Decided April 9, 1992.
 
 John M. Denby, Uniondale, N.Y. (Evan H. Krinick, Rivkin, Radler, Bayh, Hart & Kremer, John J. Clyne, Delmar, N.Y., of counsel), for defendant-appellant-cross-appellee.
 Stephen R. Coffey, Hudson, N.Y. (David M. Cherubin, Connor, Curran & Schram, Hudson, N.Y., O'Connell & Aronowitz, P.C., Albany, N.Y., of counsel), for plaintiff-appellee-cross-appellant.
 Before: WINTER, ALTIMARI, and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Invoking 42 U.S.C. § 1983 (1988), plaintiff-appellee-cross-appellant William C. Hygh sued a number of defendants for alleged constitutional violations stemming from his arrest by defendant-appellant-cross-appellee William Jacobs, a police officer of the Village of Catskill, New York, on May 21, 1987. Hygh attained judgments only against Jacobs, for (1) compensatory damages of $216,000.00 for excessive force in arresting Hygh, and $65,000.00 for false arrest; (2) nominal damages of $1.00 for malicious prosecution; and (3) punitive damages of $1,000.00. Hygh was also awarded $57,751.25 in attorney's fees and $4,508.50 in disbursements pursuant to 42 U.S.C. § 1988 (1988).
 
 
 2
 Jacobs appeals from post-trial orders that denied his motions for a new trial. Those motions asserted that (1) the verdicts of liability for false arrest and excessive use of force were contrary to the weight of the evidence, and (2) damages awarded for these claims were excessive. Jacobs also appeals from the judgment awarding attorney's fees and disbursements to Hygh. Hygh cross-appeals, seeking reinstatement of a jury award of $36,000.00 in compensatory damages for malicious prosecution that the district court reduced to $1.00 in nominal damages.
 
 
 3
 We reverse the judgment of liability for malicious prosecution. We vacate the award of $65,000 for false arrest and remand for a new trial. The award of attorney's fees is remanded for further proceedings consistent with these rulings. The judgment of liability for excessive use of force and for punitive damages is affirmed.
 
 Background
 
 4
 On the evening of May 21, 1987, Hygh visited his friend Deborah Moore at her Catskill home, during which visit he consumed two beers. The couple had a disagreement, and Hygh departed. Once outside, he removed a propane tank attached to the house and placed it on the ground. Moore then became alarmed, and instructed her daughter to telephone the police.
 
 
 5
 Jacobs arrived shortly thereafter, and a heated exchange between Hygh and Jacobs took place. Hygh volunteered that if Jacobs had any charges, Jacobs should arrest him. After further conversation, a shoving match ensued, during which Jacobs informed Hygh that he was under arrest. At this juncture, Jacobs struck Hygh in the cheek. Hygh claims that Jacobs struck him in the face from behind while Hygh was bending over to pick up his jacket after being informed that he was under arrest. Jacobs asserts that he hit Hygh with his fist in self-defense, while they were erect and facing each other, after being shoved by Hygh.
 
 
 6
 In any event, the blow to Hygh's cheek fractured his cheekbones, and plastic surgery under general anesthesia was subsequently required to deal with the injury. The plastic surgeon who performed the operation testified that the infliction of the injuries suffered by Hygh "would take ... an extremely strong blow. And classically it's a blunt instrument of some sort that we would see it." He also testified that Hygh suffered permanent nerve damage as a result of the blow. Jacobs testified that because the confrontation with Hygh occurred at night, he had a flashlight in one hand throughout the encounter.
 
 
 7
 Hygh was handcuffed and taken to the Catskill police station, where he was fingerprinted and photographed. After booking, the police took Hygh to the Greene County Memorial Hospital for treatment. He was then arraigned on charges of disorderly conduct and resisting arrest. Following arraignment, Hygh was incarcerated in the Greene County jail overnight.
 
 
 8
 At trial, Hygh called Terry C. Cox, a professor at Eastern Kentucky University, as an expert witness concerning law enforcement. Citing the results of a study in which he had participated, Cox testified that the use of a flashlight as an offensive or defensive weapon greatly increased the risk of physical injury posed by the use of a baton or nightstick. Cox also testified that in his opinion, the use of a baton or flashlight to strike a person in the head would constitute "deadly physical force" that would not be "justified under the circumstances." He further testified that, accepting Hygh's version of his encounter with Jacobs, there was no "real legitimate reason" for the use of "any force" by Jacobs.
 
 
 9
 In answer to a question whether, accepting Jacobs' version of the incident (including the dubious premise that Jacobs conceded that he hit Hygh with his flashlight rather than his fist), "Jacobs acted in an objectively reasonable manner for a police officer under the circumstances as he described them," Cox responded that Jacobs had employed "deadly physical force" whose use was not "warranted under the circumstances." He further testified that Jacobs' conduct in these circumstances was "totally improper." Cox subsequently described "deadly physical force" as "using force in such a way that it has the potential to kill someone."
 
 
 10
 In its charge to the jury, the district court set forth the elements of a § 1983 claim, and then addressed various New York statutes that bore upon the legality of Hygh's arrest, which resulted in charges of disorderly conduct and resisting arrest. In the course of this instruction, after outlining the various forms of disorderly conduct punishable under the pertinent New York statute, one of which is "us[ing] abusive or obscene language, or mak[ing] an obscene gesture," see N.Y. Penal Law § 240.20(3) (McKinney 1989), the court added the following comment.
 
 
 11
 In connection with the above statutory definitions which I just read to you, you are also charged that not every obscene or abusive word or gesture constitutes the offense of disorderly conduct. Disorderly conduct may occur where defendant, in a public place, uses abusive language or obscene language or makes obscene gestures which, in turn, provoke a breach of peace or create a public disturbance. When I use the word defendant, I meant the defendant in the disorderly conduct meeting, not the defendants here.
 
 
 12
 In its instruction concerning Hygh's claim for malicious prosecution, the district court charged that a termination favorable to Hygh of the criminal charges brought against him was an essential element of his claim, but that this element had been established as a matter of law.
 
 
 13
 The jury returned verdicts in favor of Hygh against Jacobs on the claims of excessive force for $216,000.00, false arrest for $108,000.00, and malicious prosecution for $36,000.00. Initially, however, the jury found that the malicious prosecution did not proximately cause any injury to Hygh. The court drew the inconsistency to the attention of the jury, which upon further deliberation found that the tortious conduct was a proximate cause of injuries suffered by Hygh. The jury also determined that Hygh was entitled to recover punitive damages from Jacobs, which were set at $1,000.00 after a subsequent hearing on that issue.
 
 
 14
 After the jury had rendered its verdict, Jacobs moved for judgment notwithstanding the verdict as to the claim for malicious prosecution, and for a new trial as to the remainder of the judgment. In response, the district court ruled that there was "simply no proof that the malicious prosecution caused any actual injury warranting the award of [$36,000] compensatory damages," and awarded instead one dollar in nominal damages. The court also found the award of $108,000 for false arrest to be excessive, and ordered Hygh to accept a reduction in compensatory damages for false arrest to $1,000 or undergo a new trial on the issue of such damages. Jacobs' motion was denied in all other respects.
 
 
 15
 Hygh declined to accept the proposed reduction in the false arrest award, and accordingly a second trial was held on this issue. At that trial, Hygh introduced substantial evidence regarding events that occurred at the Greene County jail after his arraignment, without objection by Jacobs (except as hereinafter specified). Hygh also introduced a mugshot photograph of himself taken at the Greene County jail that depicted his facial injuries, over objection by Jacobs that the photograph's prejudicial impact outweighed its evidentiary value. The court instructed the jury that the photograph was "being received for a limited purpose only; that is, to demonstrate to you the fact that he was going through the booking process."
 
 
 16
 Finally, during cross-examination, Hygh volunteered testimony that he was in "[e]xcruciating pain" at the Greene County jail, and then added that the police "had already broken three bones in my face" when defense counsel attempted to dampen the effect of the volunteered testimony by further cross-examination. Jacobs moved for a mistrial, but the court instead gave a limiting instruction that the jury should disregard Hygh's testimony concerning his pain and injuries (which had been fully compensated by the prior $216,000 verdict for excessive use of force). The jury then returned a verdict of $65,000 in damages for false arrest. Jacobs moved to set the verdict aside, but the district court denied the motion, stating: "The verdict is not contrary to law and, two juries having spoken and more evidence having been presented the second time, the court declines, in the exercise of its discretion, to set aside the second verdict."
 
 
 17
 Hygh's motion for attorney's fees and disbursements pursuant to 42 U.S.C. § 1988 (1988) was presented to Magistrate Judge Ralph W. Smith, Jr. for determination. Magistrate Judge Smith determined that Hygh was a "prevailing party" within the meaning of § 1988, made various adjustments to the details of the fee request submitted by Hygh, denied Hygh's request to increase the amount of attorney's fees by a multiplier of 1.25, and awarded fees in the amount of $57,751.25 and disbursements in the amount of $4,508.50 to Hygh.
 
 
 18
 This appeal followed.
 
 Discussion
 
 19
 Jacobs contends on appeal that: (1) expert testimony by Professor Cox invaded the province of the jury; (2) the district court instructed the jury erroneously as to disorderly conduct; (3) Jacobs' motion for a new trial as to all claims should have been granted; (4) the damages awards for false arrest and excessive use of force were excessive; and (5) the award of attorney's fees to Hygh was unreasonable. By cross-appeal, Hygh seeks reinstatement of the initial $36,000 award for malicious prosecution.
 
 
 20
 A. Expert Testimony.
 
 
 21
 The standard for evaluation of Cox's expert testimony regarding Jacobs' conduct is provided by Fed.R.Evid. 704(a), which provides in pertinent part: "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." While Rule 704 has abolished the common law "ultimate issue" rule, however, it has not "lower[ed] the bars so as to admit all opinions." Fed.R.Evid. 704 advisory committee's note.
 
 
 22
 This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion. See United States v. Scop, 846 F.2d 135, 140 (2d Cir.1988); Torres v. County of Oakland, 758 F.2d 147, 150 (6th Cir.1985); Strong v. E.I. DuPont de Nemours Co., 667 F.2d 682, 685-86 (8th Cir.1981); Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 510-12 (2d Cir.), cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977). As several courts have already done, see Torres, 758 F.2d at 150; Strong, 667 F.2d at 686, we invoke the advisory committee note's illuminating distinction between admissible and excludable versions of an expert's opinion testimony:
 
 
 23
 Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.
 
 
 24
 Fed.R.Evid. 704 advisory committee's note (emphasis added); see also Scop, 846 F.2d at 142 (opinion that defendant acted as a "steerer" would be legitimate under Rule 704, but testimony that defendant "possessed narcotics ... with the intent to sell" would not).
 
 
 25
 Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard--explicit or implicit--to the jury. See Andrews v. Metro N. Commuter R.R., 882 F.2d 705, 709 (2d Cir.1989); FAA v. Landy, 705 F.2d 624, 632 (2d Cir.), cert. denied, 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983). Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury. As we stated in Marx:
 
 
 26
 The basis of expert capacity, according to Wigmore (§ 555), may "be summed up in the term 'experience.' " But experience is hardly a qualification for construing a document for its legal effect when there is a knowledgeable gentleman in a robe whose exclusive province it is to instruct the jury on the law. The danger is that the jury may think that the "expert" in the particular branch of the law knows more than the judge--surely an inadmissible inference in our system of law.
 
 
 27
 Marx, 550 F.2d at 512; see also Specht v. Jensen, 853 F.2d 805, 808-09 (10th Cir.1988) (in banc), cert. denied, 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989).
 
 
 28
 In this case, Professor Cox was questioned extensively concerning Jacobs' use of force. In the course of that testimony, he tendered some conclusions that we deem to have crossed the line provided by Rule 704. He provided a definition of deadly physical force as "using force in such a way that it has the potential to kill someone." As is discussed infra, however, § 1983 actions that are premised upon traditional torts generally incorporate the law of the pertinent state jurisdiction, and New York provides a statutory definition of deadly physical force that is pertinent here. See N.Y. Penal Law § 10.00(11) (McKinney 1987) (" 'Deadly physical force' means physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury."). The difference between the Cox and statutory formulations is not substantial, however, and the court later charged the jury comprehensively regarding the standards by which Jacobs' use of force against Hygh was to be measured.
 
 
 29
 Far more troubling, Cox testified that Jacobs' conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper." We have held that an expert's testimony that a defendant was "negligent" should not have been allowed. See Andrews, 882 F.2d at 709; see also Strong, 667 F.2d at 686 (question whether lack of warnings rendered product unreasonably dangerous for jury, not expert). We see no significant distinction in Cox's conclusory condemnations of Jacobs' actions here, which, in the language of the advisory committee, "merely [told] the jury what result to reach." Fed.R.Evid. 704 advisory committee's note.
 
 
 30
 While we recognize that "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous," Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962), we nonetheless conclude that Cox's testimony regarding the ultimate legal conclusion entrusted to the jury crossed the line and should have been excluded. Furthermore, Jacobs made timely objection to this testimony. See Fed.R.Evid. 103(a)(1). We conclude, however, that the error was harmless, see Fed.R.Civ.P. 61; Fed.R.Evid. 103(a), and therefore does not call for reversal.
 
 
 31
 The burden of demonstrating prejudice requiring reversal rests with the party asserting error. See Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 481-82, 87 L.Ed. 645 (1943); United States v. Seaboard Sur. Co., 817 F.2d 956, 964 (2d Cir.), cert. denied, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 115 (1987); K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1155-56 (10th Cir.1985); Perry v. State Farm Fire & Cas. Co., 734 F.2d 1441, 1446 (11th Cir.1984) (per curiam), cert. denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985); Liner v. J.B. Talley & Co., 618 F.2d 327, 329 (5th Cir.1980) (per curiam). Cox's impermissible testimony was expressed within a larger body of otherwise unobjectionable testimony concerning police procedures involving violent arrestees from which the jury could easily have drawn the same conclusions that Cox did.
 
 
 32
 Further, the evidence that Jacobs did in fact use excessive force against Hygh was strong. The trial judge instructed the jury that it could reject expert testimony "if, after careful consideration of the evidence, you simply disagree with it." The trial judge also instructed the jury extensively concerning Jacobs' use of force, and repeated that instruction in response to an inquiry during the jury's deliberations. Although the question is close, we conclude that the standard of "substantial justice," Fed.R.Civ.P. 61, does not call for a new trial because of the erroneous admission of Cox's impermissibly conclusory testimony. See United States v. Rea, 958 F.2d 1206, 1219-21 (2d Cir.1992); United States v. Oshatz, 912 F.2d 534, 541 (2d Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991).
 
 
 33
 B. The Jury Instruction on Disorderly Conduct.
 
 
 34
 This court has held that "[i]n addressing a claim of error in the court's instructions to the jury, we must decide whether the entire charge, viewed in the light of all of the evidence, would tend to confuse or mislead the jury as to the principles of law that apply to the facts." National R.R. Passenger Corp. v. 25,900 Square Foot Parcel of Land, 766 F.2d 685, 688 (2d Cir.1985). We will reverse a judgment if a jury instruction is likely to have misled or confused the jury. DeLima v. Trinidad Corp., 302 F.2d 585, 587 (2d Cir.1962).
 
 
 35
 Jacobs contends that the district court erred in instructing that disorderly conduct occurs "where defendant, in a public place, uses abusive language or obscene language or makes obscene gestures which, in turn, provoke a breach of peace or create a public disturbance." The pertinent statute requires that the defendant's conduct occur "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." N.Y. Penal Law § 240.20 (McKinney 1989). Jacobs did not object to this instruction, which was an effort to comply with an earlier understanding between the court and counsel on this subject. Under these circumstances, even if the court's instruction might be deemed a slight departure from the statutory standard, there is no basis for reversal. See Fed.R.Civ.P. 51; Spano v. N.V. Koninklijke Rotterdamsche Lloyd, 472 F.2d 33, 34-35 (2d Cir.1973) (per curiam).
 
 
 36
 C. Denial of Jacobs' Motion for a New Trial.
 
 
 37
 We find no error in the district court's denial of Jacobs' motion for a new trial. Such a denial will be reversed only if it constitutes "a clear abuse of discretion." Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 370 (2d Cir.1988) (citing Bauer v. Raymark Indus., Inc., 849 F.2d 790, 792 (2d Cir.1988); Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 132-33 (2d Cir.1986)). Further, the district court "ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Id. (citing Mallis v. Bankers Trust Co., 717 F.2d 683, 691 (2d Cir.1983); Bevevino v. Saydjari, 574 F.2d 676, 684 (2d Cir.1978)). The record amply supported the findings of liability as to Jacobs (except, as is discussed infra, as to malicious prosecution).
 
 
 38
 D. The Damages Awards.
 
 
 39
 Jacobs contends that the damages awards of $216,000 for excessive use of force and $65,000 for false arrest are excessive, thus requiring a new trial. We are unpersuaded with respect to the $216,000 award. Hygh suffered serious and painful injuries that required surgery under general anesthesia, and the left side of his face is permanently numb. Under these circumstances, the jury's award is not unreasonable and should not be disturbed. See Ismail v. Cohen, 899 F.2d 183, 186-87 (2d Cir.1990).
 
 
 40
 We take a different view, however, regarding the $65,000 award for false arrest. The elements of a claim of false arrest under § 1983 are " 'substantially the same' " as the elements of a false arrest claim under New York law. Posr v. Doherty, 944 F.2d 91, 96 (2d Cir.1991) (quoting Raysor v. Port Auth., 768 F.2d 34, 39-40 (2d Cir.1985), cert. denied, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986)). Similarly, "[b]ecause the same four elements must be proved for both the tort of malicious prosecution and the related section 1983 violation, the claims are virtually identical." Raysor, 768 F.2d at 39 (citations omitted). It follows that the relationship of the two § 1983 claims should mirror the relationship of the two torts under New York law.
 
 
 41
 That law provides that damages may be awarded for false arrest only for the period from initial custody until arraignment. See Dabbs v. New York, 59 N.Y.2d 213, 218, 451 N.E.2d 186, 188, 464 N.Y.S.2d 428, 430 (1983). "Subsequent damages resulting from continued incarceration are attributable only to the tort of malicious prosecution...." Id. (citing Broughton v. New York, 37 N.Y.2d 451, 335 N.E.2d 310, 373 N.Y.S.2d 87, cert. denied, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975); Woodard v. City of Albany, 81 A.D.2d 947, 439 N.Y.S.2d 701 (3d Dep't 1981)); see also Oakley v. City of Rochester, 71 A.D.2d 15, 18, 421 N.Y.S.2d 472, 474 (4th Dep't 1979), aff'd, 51 N.Y.2d 908, 415 N.E.2d 966, 434 N.Y.S.2d 977 (1980).
 
 
 42
 Hygh was the only witness who testified at the damages trial. Seven pages of the transcript of his direct testimony related to the period from his arrest at approximately 11:30 p.m. on May 21, 1987 until his arraignment at approximately 3:00 a.m. the next morning. In that testimony, Hygh described his arrest, his being transported in a police car to the Catskill police station, his booking at the police station, his being transported to a local hospital for treatment, and his return from the hospital to the police station for arraignment. Hygh testified that he was handcuffed throughout most of this period, that his requests to loosen or remove the handcuffs were denied, and that he was not allowed to make any telephone calls.
 
 
 43
 Ten pages of the transcript related to the period from arraignment until his release from the Greene County jail at 9:30 that morning. The latter testimony addressed, inter alia, Hygh's being verbally abused by a police officer (other than Jacobs); being deprived of medication for his blood pressure that he had been given at the hospital; being photographed and fingerprinted with attendant "humiliation"; and being stripped and fearing a cavity search. Jacobs was not present at the Greene County jail.
 
 
 44
 None of the latter evidence was properly admissible regarding damages for false arrest, because it related to events that occurred after arraignment. Jacobs made no objection, however, to its admission. He did object, on grounds of undue prejudice, to the admission of the mugshot photograph that the court allowed in evidence "to demonstrate to you the fact that [Hygh] was going through the booking process."
 
 
 45
 Jacobs also sought a mistrial in response to the volunteered testimony by Hygh that he was in "[e]xcruciating pain" at the Greene County jail, and that the police "had already broken three bones in my face." The district court considered declaring a mistrial because of the testimony volunteered by Hygh, but settled for a curative instruction that the jury should disregard Hygh's injuries in determining damages.
 
 
 46
 The testimony concerning events that occurred after arraignment at the Greene County jail to which no objection was taken, although clearly improper and prejudicial, would provide no basis for appellate vacatur or reversal, standing alone. See Fed.R.Evid. 103(a)(1) (error may not be predicated on evidentiary ruling to which no timely objection taken). On the other hand, even though substantial deference is accorded to a trial judge's balancing of probative value against prejudice under Fed.R.Evid. 403, it was an abuse of discretion to admit the mugshot photograph that depicted Hygh's facial injuries.
 
 
 47
 There was no dispute that Hygh "was going through the booking process" at the Greene County jail, and therefore no need to allow the photograph in evidence to establish this obvious point. On the other hand, its admission inevitably fastened the jury's attention upon Hygh's injuries, which had already been fully compensated by the $216,000 award for excessive use of force. The problem was exacerbated by Hygh's volunteered testimony concerning his "[e]xcruciating pain," and the fact that the police "had already broken three bones in [his] face."
 
 
 48
 Weighing into the balance the evidence that bore upon the events between Hygh's arrest and arraignment, the improperly admitted evidence, counsel's failure to pose any general objection to the admission of postarraignment evidence, and the court's limiting and curative instructions, and the amount of damages awarded on this claim, we conclude that affirmance of the $65,000 award on this record would be "inconsistent with substantial justice." Fed.R.Civ.P. 61. We will accordingly vacate the judgment and remand for a new trial on this claim.[1]
 
 
 49
 E. Malicious Prosecution.
 
 
 50
 Hygh cross-appeals, contending for restoration of the initial $36,000 award for malicious prosecution. Jacobs contends that even nominal damages of $1.00 were improperly awarded, because there was no basis for liability on this claim. We agree with Jacobs.
 
 
 51
 A cause of action for malicious prosecution may not be maintained where the prosecution of the plaintiff was not terminated in his favor. As will appear, Hygh did not establish this essential element of his claim, and therefore cannot prevail thereon.
 
 
 52
 Hygh correctly points out that this issue was not preserved for review at the district court level. Although Jacobs moved for a directed verdict on grounds of failure to prove a prima facie case, his motion related to the issue of damages, not to the issue of favorable termination. However, while appellate review is generally inappropriate when the appealing party has not first raised the contested point in the district court, see Fed.R.Civ.P. 46; Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp., 801 F.2d 13, 26 (2d Cir.1986), cert. denied, 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987), we may depart from this rule to avoid manifest injustice or a plainly erroneous result. See Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 281 (2d Cir.1987). We do find that the judgment below was plain error. The termination of the proceedings against Hygh was not favorable, as a matter of law. The jury was instructed, on the contrary, that Hygh had established the element of favorable termination as a matter of law.
 
 
 53
 A plaintiff alleging the constitutional tort of malicious prosecution in an action pursuant to § 1983 must establish termination of the prosecution in his favor in accordance with applicable state law. See Singleton v. City of New York, 632 F.2d 185, 195 (2d Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). The prosecution of Hygh was dismissed in the interest of justice pursuant to N.Y.Crim.Proc. Law § 170.40 (McKinney 1982). "A dismissal 'in the interest of justice' is neither an acquittal of the charges nor any determination of the merits. Rather, it leaves the question of guilt or innocence unanswered." Ryan v. New York Tel. Co., 62 N.Y.2d 494, 504-05, 467 N.E.2d 487, 493, 478 N.Y.S.2d 823, 829 (1984). Consequently, as a matter of law, it cannot provide the favorable termination required as the basis for a claim of malicious prosecution. See Kramer v. Herrera, 176 A.D.2d 1241, 576 N.Y.S.2d 736, 737 (4th Dep't 1991) (mem.); Manno v. State, 176 A.D.2d 1222, 576 N.Y.S.2d 717, 717 (4th Dep't 1991) (mem.); MacLeay v. Arden Hill Hosp., 164 A.D.2d 228, 230-31, 563 N.Y.S.2d 333, 334-35 (3d Dep't 1990), appeal denied, 77 N.Y.2d 806, 571 N.E.2d 83, 568 N.Y.S.2d 913 (1991); Jackson v. County of Nassau, 123 A.D.2d 834, 834, 507 N.Y.S.2d 449, 450 (2d Dep't 1986) (mem.), appeal denied, 69 N.Y.2d 608, 509 N.E.2d 358, 516 N.Y.S.2d 1023 (1987); Miller v. Star, 123 A.D.2d 750, 751, 507 N.Y.S.2d 223, 224 (2d Dep't 1986) (mem.).
 
 
 54
 F. Attorney's Fees.
 
 
 55
 Finally, we address Jacobs' appeal from the award of attorney's fees. Magistrate Judge Smith carefully reviewed the time records submitted by Hygh's counsel, deleted some items as duplicative or not related to the claims against Jacobs, lowered some of the claimed hourly rates, and refused to apply the proposed 1.25 multiplier to the resulting lodestar figure. We perceive no error in any of his determinations.
 
 
 56
 This determination was premised in part, however, upon Hygh's having prevailed (as to liability) on his claim for malicious prosecution, a ruling that we have now reversed. Further, the ultimate outcome of Hygh's claim for false arrest is now less clear in view of our vacatur of the $65,000 judgment awarded as a result of the separate trial on the issue of damages for false arrest. The issue of attorney's fees will therefore have to be reconsidered upon remand. See Hensley v. Eckerhart, 461 U.S. 424, 434-35, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983); McCann v. Coughlin, 698 F.2d 112, 129-30 (2d Cir.1983).
 
 Conclusion
 
 57
 The judgment of liability for malicious prosecution is reversed. The judgment awarding $65,000 for false arrest is vacated and remanded for a new trial not inconsistent with this opinion. The judgment awarding attorney's fees is vacated and remanded for further proceedings not inconsistent with this opinion. The judgment of liability for excessive use of force and for punitive damages is affirmed.
 
 
 
 [1]
 Remittitur, "the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial," Shu-Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 49 (2d Cir.1984), is not an available option in this case. "Remittitur is appropriate to reduce verdicts only in cases 'in which a properly instructed jury hearing properly admitted evidence nevertheless makes an excessive award.' " Werbungs und Commerz Union Austalt v. Collectors Guild, Ltd., 930 F.2d 1021, 1027 (2d Cir.1991) (quoting Shu-Tao Lin, 742 F.2d at 50); see also Baskin v. Hawley, 807 F.2d 1120, 1135 (2d Cir.1986)