19-3083
*Mauro-Tartaglia v. Maxian*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of December, two thousand twenty.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> AMALYA L. KEARSE,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

MICHELLE MAURO-TARTAGLIA,

> *Plaintiff-Appellant*,

v.                                                            19-3083

TINA MAXIAN, M.D., SCHENECTADY REGIONAL
ORTHOPEDIC ASSOCIATES, PC,

> *Defendants-Appellees*.

_____

For Plaintiff-Appellant:              BONNIE ROSE WATSON, Girvin & Ferlazzo, P.C., Albany, N.Y.

For Defendants-Appellees:         SHAWN F. BROUSSEAU, Napierski, VanDenburgh, Napierski & O'Connor LLP, Albany, N.Y.

1

Appeal from a judgment of the United States District Court for the Northern District of New York (Hummel, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Michele Mauro-Tartaglia ("Mauro-Tartagalia") contends that the district court abused its discretion in denying her motion for a new trial pursuant to Federal Rule of Civil Procedure 59 following the jury's verdict against her. She argues that she did not provide informed consent for a series of orthopedic procedures performed by Defendant-Appellee Dr. Tina Maxian ("Maxian") because Maxian failed to apprise her of the reasonably foreseeable risks of surgery, the risks of forgoing surgery, and the alternatives to surgery. Because we conclude that the jury's verdict was not against the clear weight of the evidence presented at trial, the district court did not abuse its discretion in denying Mauro-Tartaglia's new trial motion. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

A district court may grant a new trial if, as relevant here, the jury returned a verdict that is against the weight of the evidence. *Piesco v. Koch*, 12 F.3d 332, 345 (2d Cir. 1993). However, "a trial court should be most reluctant to set aside that which it has previously decided," *LiButti v. United States*, 178 F.3d 114, 118 (2d Cir. 1999), and therefore should stay its hand unless it "is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice," *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir. 1992)). We review a district court's denial of a motion for a new trial for abuse of discretion. *See Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018).

2

Under New York law, a patient must give informed consent to a medical procedure. N.Y. Pub. Health Law § 2805-d; *see, e.g.*, *Sarwan v. Portnoy*, 51 AD3d 655, 656 (2d Dept 2008). In this case, the jury was instructed (without objection) that "[i]t is the doctor's duty to explain, in words that are understandable to the patient, all of the facts that would be explained by a reasonable medical practitioner so that when the patient does, in fact, consent, that consent is given with an awareness of (1) the patient's existing physical condition; (2) the purposes and advantages of the operation, procedure, or medication; (3) the reasonably foreseeable risks to the patient's health or life which the operation, procedure, or medication may impose; (4) the risks involved to the patient if there is no operation, procedure or use of medication; and (5) the available alternatives and the risks and advantages of those alternatives." Joint App'x at 304. The parties dispute only whether Maxian satisfied the third, fourth, and fifth elements of this legal standard. We conclude that as to each, the evidence supports the jury's verdict in Maxian's favor.

First, the jury had an ample basis on which to conclude that Maxian properly informed Mauro-Tartaglia of the reasonably foreseeable risks of the procedures. Maxian testified that although she could not recall precisely what she said to Mauro-Tartaglia prior to the surgery, she ordinarily informed patients of three risks: wounds, hardware failure, and the foot looking abnormal. *See* Joint App'x at 152–55. As part of her routine explanation, Maxian typically described the medical procedure, informing patients that she would "perforate the bone with a drill, and then realign it and place" screws or other hardware into the bone. *Id.* at 150. From this testimony, the jury was entitled to conclude that the reasonably foreseeable risks were disclosed, and that the associated risks of pain, swelling, and possible future surgery from hardware failure or other complications were sufficiently evident that they did not require independent disclosure. *See* N.Y. Pub. Heath Law § 2805-d(4)(a) (relieving physicians of a duty to warn

3

patients of risks "too commonly known to warrant disclosure"). The jury was likewise permitted to infer that other potential risks, such as problems with bone union, were not reasonably foreseeable in light of testimony that those risks were uncommon.

Next, the record supports the jury's conclusion that Maxian gave Mauro-Tartaglia enough information to apprise her of the reasonably foreseeable risks of forgoing the procedure. Even though Maxian testified that she would not ordinarily discuss the risks of forgoing surgery, Joint App'x at 156, Mauro-Tartaglia testified that she knew that forgoing surgery was an option, that there were no risks associated with not having surgery, and that Maxian in fact informed her of this option, Joint App'x at 203. Accordingly, Mauro-Tartaglia was not entitled to relief based on any error in the jury's evaluation of the evidence as to Maxian's supposed failure to advise Mauro-Tartaglia about the risks of doing nothing.

Finally, the jury's conclusion that Maxian sufficiently informed Mauro-Tartaglia of the alternatives to surgery is also not against the clear weight of the evidence. To be sure, all three physicians who testified identified orthotic footwear as a nonsurgical intervention Mauro-Tartaglia might have tried. However, the jury was entitled to credit Dr. Mann's general assertion that the only "alternative [to surgery] is not to have anything done," Joint App'x at 274, Dr. Boc's concession that hammertoes cannot be corrected "short of surgical procedures," Joint App'x at 230, and Maxian's statement that the nonsurgical options available to Mauro-Tartaglia were "accommodation[s]" rather than "treatment[s]," Joint App'x at 160. The record thus supports a finding that the only alternative to the procedure was to forgo it altogether. As discussed above, Mauro-Tartaglia testified that she knew not having surgery was an option, and that there was no marginal risk associated with it.

4

For these reasons, the district court did not abuse its discretion in concluding that the jury's verdict was not against the clear weight of the evidence. We have considered Mauro-Tartaglia's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk