*Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of November, two thousand twenty-five.

PRESENT:

> JOHN M. WALKER, JR.,
> REENA RAGGI,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

ALESSI EQUIPMENT, INC.,

> *Plaintiff-Appellee*,

v.                                                            No. 22-2317

AMERICAN PILEDRIVING EQUIPMENT, INC.,

> *Defendant-Appellant*.*

_____

_____

* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

| For Defendant-Appellant: | BRIAN D. WALLER, Peckar & Abramson, P.C., New York, NY. |
|---|---|
| For Plaintiff-Appellee: | KRISTOPHER M. DENNIS, The Law Office of Kristopher M. Dennis, New York, NY (Keith A. Lavallee, Lavallee Law Offices PLLC, Farmingdale, NY, *on the brief*). |

Appeal from a judgment of the United States District Court for the Southern District of New York (Judith C. McCarthy, *Magistrate Judge*).[1]

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the December 30, 2022 judgment of the district court is **AFFIRMED**.

Defendant American Piledriving Equipment, Inc. ("APE"), a manufacturer of heavy construction equipment, appeals from the district court's judgment awarding damages to APE's distributor, Alessi Equipment, Inc. ("Alessi"), for APE's breach of a distribution agreement entered by the parties in 2012 (the "2012 Distributor Agreement"). On appeal, APE challenges the district court's (1) grant of summary judgment against APE as to liability on Alessi's breach-of-contract claim; (2) denial of APE's post-trial motion for judgment as a matter of law

---

[1] The parties consented to have the case heard by a magistrate judge pursuant to 28 U.S.C. § 636(c).

pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative, for a new trial or *remittitur* pursuant to Rule 59(a); and (3) award of prejudgment interest to Alessi. In a published opinion filed today, we reject the last of these arguments as meritless. We address all other arguments in this summary order and assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I. Grant of Summary Judgment for Alessi as to APE's Liability

APE first challenges the district court's order granting summary judgment in favor of Alessi on APE's claim for breach of the 2012 Distributor Agreement. We review a district court's grant of summary judgment *de novo*. *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 253 (2d Cir. 2002). Summary judgment is appropriate only when, after "examin[ing] the evidence in the light most favorable to, and draw[ing] all inferences in favor of, the non-movant," "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted).

APE begins by arguing that the 2012 Distributor Agreement was not an enforceable contract because it lacked consideration and material terms. But the New York Uniform Commercial Code (the "N.Y. U.C.C."), which governs

3

exclusive distribution agreements like the one here,[2] makes clear that "[e]ven though one or more terms are left open[,] a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." N.Y. U.C.C. § 2-204(3). To this end, the N.Y. U.C.C. includes "gap[-]filling" provisions that supply "a reasonable price at the time of delivery," a reasonable delivery location, and "a reasonable time" for shipment or delivery. *See id.* §§ 2-305(1) (default price standards), 2-308 (default delivery locations), 2-309(1) (default shipment terms). Thus, under the N.Y. U.C.C., an "exclusive[-]dealing" agreement need not contain explicit quantity terms, and instead automatically creates "best[-]efforts" obligations for a supplier to make the goods called for by the contract and for a buyer to promote sales of the goods. *See id*. § 2-306(2) & cmt. 5.

Here, the record leaves no doubt that the parties intended to make a binding contract by entering into the 2012 Distributor Agreement. That agreement provided that: (1) Alessi would be the exclusive distributor of a vibratory hammer developed by APE – the Robovib – and other excavator-mounted equipment in the Northeast; (2) Alessi would pay APE "a 2% commission on any APE[] Robovib

---

[2] *See* N.Y. U.C.C. §§ 2-102, 2-106(1); *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 726 (2d Cir. 1992); *Gerard v. Almouli*, 746 F.2d 936, 939 (2d Cir. 1984).

or excavator[-]mounted equipment sold outside" the Northeast; (3) "in return," APE would "direct all Rob[o]vib and excavator rentals and sales to Alessi . . . as a first option"; (4) Alessi would provide "service and set up," or otherwise "pay APE's service department to provide services"; and (5) the contract would automatically renew each year "unless otherwise cancelled in writing," in which case a two-year cancellation period would apply. J. App'x at 1112.

Additionally, section 2-306(2) of the N.Y. U.C.C. supplied the contract's missing "quantity" term by requiring both parties to use "best efforts" in manufacturing and selling the equipment. The remaining material terms, including the price and manner of delivery, were also provided by the gap-filling measures of the N.Y. U.C.C.. *See* N.Y. U.C.C. §§ 2-305(1), 2-306(2), 2-308, 2-309(1); *see also Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 546 (2d Cir. 1989) ("Many a gap in terms can be filled, and should be filled, where it is clear that the parties intended to form a contract and to bind themselves to render a future performance.") (internal quotation marks and alterations omitted)). In light of these provisions, the district court did not err in concluding as a matter of law that the 2012 Distributor Agreement constituted an enforceable contract – and that APE

5

breached that agreement by selling equipment covered therein to third parties in the Northeast.[3]

APE also argues that John White, APE's signatory to the 2012 Distributor Agreement, lacked authority to bind APE – thus rendering the agreement unenforceable – because White "had already given notice" and "transitioned out of his role as president." APE Br. at 15–16. "Under New York law, an agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." *Highland Cap. Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010). "New York cases, as well as federal cases applying New York law, have adopted the 'ordinary business rule,'" under which there is a "presumption" that a "president's authority extends . . . to transactions in the ordinary course of the company's business." *Sci. Holding Co. v. Plessey Inc.*, 510 F.2d 15, 23–24 (2d Cir. 1974); *see also Odell v. 704 Broadway Condo.*,

---

[3] APE also contends that the 2012 Distributor Agreement was not enforceable because it did not mention the twenty-percent discount that APE purportedly had been giving Alessi. The district court correctly reserved this issue for the damages trial, however, so that a jury could determine whether extrinsic evidence indicated that the parties agreed to the discount. *See* N.Y. U.C.C. § 2-202 (providing that terms "may be explained or supplemented" by (1) "course of performance, course of dealing, or usage of trade" and (2) "evidence of consistent additional terms," so long as the parties did not "intend[]" the agreement to be "a complete and exclusive statement of the terms of the agreement"). After a four-day trial, the jury awarded $920,846.70 in damages to Alessi, offset by $52,505.92 that Alessi owed to APE under the 2016 rental agreement.

728 N.Y.S.2d 464, 468–69 (1st Dep't 2001).

Here, it is undisputed that White was still APE's President when he signed the 2012 Distributor Agreement and that this transaction was negotiated during the ordinary course of APE's business. Indeed, it was White who initially brokered the business arrangement between the two companies in the mid-1990s, and it was White who later executed an agreement in 2004 that granted Alessi "the exclusive right to sell" the Robovib "in the Northeast USA" and the "non-exclusive right to sell [the product] anywhere else in the USA." J. App'x at 1097. The record contains no evidence suggesting that APE formally stripped White of his authority to negotiate such contracts prior to the execution of the 2012 Distributor Agreement. Accordingly, the district court did not err in concluding that no reasonable factfinder could have found that White lacked actual authority to enter into the agreement on behalf of APE.[4]

---

[4] We also agree with the district court that, in the alternative, there was no dispute of material fact that White had *apparent* authority to conduct business on behalf of APE. This is because "[APE's] conduct create[d] the appearance that [its] agent ha[d] such authority," *Goldston v. Bandwidth Tech. Corp.*, 859 N.Y.S.2d 651, 655 (1st Dep't 2008) (citing *Hallock v. State of New York*, 485 N.Y.S.2d 510, 513–14 (N.Y. 1984)), and "[Alessi's] reliance on the appearance of authority in [White] was reasonable," given that nothing in the record suggests that Alessi had a duty to inquire about the scope of White's authority, *F.D.I.C. v. Providence Coll.*, 115 F.3d 136, 140–41 (2d Cir. 1997).

## II. Denial of APE's Rule 50(b) and Rule 59(a) Motions as to Alessi's Damages

APE next contends that the district court erred in denying its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) at the close of the damages trial. We review a district court's denial of a Rule 50(b) motion *de novo*. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008). Such a motion "may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair[-]minded persons could not arrive at a verdict against it." *Id.* (internal quotation marks omitted and alterations accepted).

Here, APE argues that the evidence was insufficient to support the jury's award of damages for APE's failure to provide a discount on parts purchased by Alessi. We disagree. At trial, witnesses stated that APE failed to provide Alessi with a twenty-percent discount on its purchases of both equipment and parts. As the district court noted, Gerald Alessi, Alessi's owner, gave "unqualified testimony that he 'always' received a [twenty-percent] discount when he purchased from APE." Sp. App'x at 79. Mr. Alessi further testified that although some "invoices" from "2012 through 2017" "reflected the [twenty-]percent

8

discount . . . for the parts," Alessi stopped receiving discounts "around 2013 [or] 2014" and had to "call[] about the discount" "[e]very time [twenty] percent wasn't on the invoice." J. App'x at 1694–95. Finally, Alessi introduced Plaintiff's Exhibit 9 ("PX-9"), which listed all of APE's transactions that included invoice numbers starting with a "P" but made no reference to any discounts. Based on this exhibit, along with testimony that it was APE's practice to use the "P" designation on invoices for parts, a reasonable jury could have inferred that Alessi had purchased parts without receiving the twenty percent discount from APE.

In light of this evidence, the jury reasonably concluded that all parts-related sales to Alessi listed on PX-9 should have included the agreed-to discount, but that Alessi stopped receiving that discount by 2013 or 2014. *See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110–11 (2d Cir. 2007) (explaining that, under New York law, "the plaintiff need only show a stable foundation for a reasonable estimate of the damage incurred as a result of the breach" (internal quotation marks omitted)). The district court therefore did not err in denying APE's Rule 50(b) motion, since it cannot be said that – "with credibility assessments made against [APE] and all inferences drawn against [APE]" – "a reasonable juror" would have been "compelled to accept the view of [APE]."

*Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 112–13 (2d Cir. 2015).

APE further contends that the district court erred in denying APE's motion for a new trial or *remittitur* under Rule 59(a). We review a district court's denial of a Rule 59(a) motion for abuse of discretion. *See In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 112 n.34 (2d Cir. 2013). A district court "ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir. 1992) (internal quotation marks omitted). Meanwhile, *remittitur* is "the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir. 1990) (internal quotation marks omitted). Where, as here, damages are issued based on state-law claims, a district court must review the award under state law to determine whether *remittitur* is warranted. *See Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005). Under New York law, an award of damages must be reduced only if it "deviates materially from what would be reasonable compensation." N.Y. C.P.L.R. § 5501(c).

APE challenges the jury's damages award for APE's direct sales of equipment and parts to third parties, as well as for APE's failure to provide

discounts on equipment and parts purchased by Alessi. We find no abuse of discretion in the district court's determination that the jury's award constituted "reasonable compensation" for APE's breach. N.Y. C.P.L.R. § 5501(c). After reviewing PX-9, the district court concluded that "the maximum amount the jury could have awarded Alessi for damages related to parts" was $163,633.55. Sp. App'x at 93. This figure, when added to the district court's damages calculations for direct sales and withheld discounts on *equipment*, yielded a total damages figure of, at most, $1,022,830.31. J. App'x at 1990, 2214–16, 2166–88. This was not far from the jury's award of $920,846.70, and fell well below the $1.5 million that Alessi requested during its opening and summation.

To be sure, the district court noted that a different method of calculating damages could have resulted in a figure closer to $825,876.06. But it was not the district court's place to substitute its judgment for the jury's, and we cannot say that the damages figure arrived at by the jury constitutes either a material deviation from "reasonable compensation," N.Y. C.P.L.R. § 5501(c), or a "seriously erroneous result," *Hygh*, 961 F.2d at 365. This is especially true in light of APE's failure to introduce the actual invoices corresponding to the transactions at issue – and its failure to identify possible discrepancies for the jury – that would have

11

permitted the jury to calculate damages with a more critical eye. *See Tractebel Energy Mktg., Inc.*, 487 F.3d at 110 ("The burden of uncertainty as to the amount of damage is upon the wrongdoer." (alterations accepted and internal quotation marks omitted)).

\*    \*    \*

We have considered APE's remaining arguments and find them to be without merit. Accordingly, for the reasons set forth above and in our separately issued opinion, we **AFFIRM** the amended judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court