■ PATERNO & SONS, INC., Appellant-Respondent, v. TOWN OF NEW WINDSOR, Respondent-Appellant.— In an action (1) to rescind a contract under which plaintiff was to construct a sewerage trunk system for a sewer district in defendant town and (2) to recover in quantum meruit for work done, (a) plaintiff appeals from an order of the Supreme Court, Orange County, entered June 28, 1973, which, after reargument, inter alia (i) denied plaintiff's motion for summary judgment "for the relief demanded in the complaint", (ii) granted plaintiff summary judgment for the balance due under the contract to the date the contract was terminated, the amount to be determined upon an assessment, and (iii) granted in part defendant's motion to amend its answer to set forth a counterclaim for liquidated damages; and (2) defendant cross-appeals, as limited by its brief, from so much of the order as denied the branch of its cross motion which was for leave to interpose a second and third counterclaim against plaintiff and a first and second cross claim

against other parties. Order modified, on the law, by (1) deleting from the first decretal paragraph thereof (which denied plaintiff's motion " for the relief demanded in the complaint ") the word " denied " and substituting therefor the word " granted "; (2) deleting the third decretal paragraph thereof (which granted plaintiff summary judgment for the above mentioned balance); and (3) deleting from the fourth decretal paragraph (which directed that the assessment be held before the court " and a jury ") the word " and " and substituting therefor the word " without ". As so modified, order affirmed, with $20 costs and disbursements to plaintiff. We agree with Special Term that the failure of defendant to make the periodic payments due under the contract constituted a breach entitling plaintiff to regard the contract as terminated (*Anderson* v. *Hayes Constr. Co.*, 243 N. Y. 140, 149–150; 10 N. Y. Jur., Contracts, § 384). However, we do not believe that the fact that the contract calls for periodic payments limits plaintiff to recovering the balance due under the contract. We consider it well-settled law that a plaintiff has the right of electing, on the breach of a contract, to maintain an action on the contract for the work performed and the material supplied and for the damage flowing from the failure of the defendant to permit him to complete the contract, or, as in the case at bar, to abandon any claim on or under the contract and to sue for *quantum meruit* for the work, labor and services and materials furnished (*Raile* v. *Peerless Amer. Prods. Co.*, 192 App. Div. 506; *Atlantic, Gulf & Pacific Co.* v. *Woodmere Realty Co.*, 156 App. Div. 351). Having elected to sue in equity, for recission, plaintiff has waived its right to a jury trial on the assessment in *quantum meruit*. Plaintiff is entitled to recover in *quantum meruit*. However, defendant may plead a counterclaim for liquidated damages for the alleged delay in the performance by plaintiff prior to defendant's breach so as to reduce the final award to plaintiff if defendant can establish its right to such liquidated damages (CPLR 3019, subd. [a]). Hopkins, Acting P. J., Shapiro, Christ and Brennan, JJ., concur; Benjamin, J., dissents in part and votes to modify the order by striking the third decretal paragraph thereof and substituting therefor a provision granting plaintiff summary judgment for the reasonable value. of the work done by plaintiff, but limited proportionately to the total contract price and less the total of the payments made, with the following memorandum: Plaintiff and defendant entered into a written agreement whereby plaintiff agreed to furnish all labor, plant, materials, etc., for the construction of a sewer trunk system for the defendant town. The contract provided for periodic payments as the work progressed, contained prices for each unit of various items or categories of work, and provided for such payment as would be agreed upon for any additional or extra work. The payments were to be made not later than the 15th day of each month, " on the basis of a duly certified approved Engineer's Estimate of the work performed during the preceding calendar month by the Contractor ", with the usual 10% retained by the town until final completion. In October, 1972 plaintiff did not receive the engineer's certification for the amount approved for payment of the work performed to the end of September, 1972. On October 6, 1972 defendant informed plaintiff that it lacked sufficient funds with which to make further payments. On October 20, 1972 plaintiff notified defendant that the latter's inability to pay was a material breach and that plaintiff considered the contract terminated and rescinded. At the time plaintiff suspended performance it would have been entitled to a further payment from defendant of about $75,000 for the work performed during September, 1972. Further, defendant had retained approximately $130,000 from previous monthly payments. Thus, the maximum due under the contract for work done at the time performance was suspended was $205,-

000. Plaintiff sought recovery upon the theory of *quantum meruit*, claiming the reasonable value of the work performed until the breach to be $1,976,975, less $1,163,686 (moneys previously paid to plaintiff), resulting in a claimed net sum due of $813,289. Thus, by employing a *quantum meruit* theory of recovery, plaintiff sought to gain a net surplusage over the payments due pursuant to the contract of $608,289. It is contended that the unilateral termination of the contract by the municipality permits such a windfall. I agree that the law permits plaintiff to abandon the contract and seek recovery in *quantum meruit* under the circumstances here involved (*Clark* v. *Mayor, etc., of City of New York*, 4 N. Y. 338). I do not read that case, however, as supporting a "penalty" recovery. In *Clark*, the contract provided for 150,000 cubic yards of earth to be excavated at the unit price of $1 a yard. After some 68,000 yards of earth had been excavated, the governmental authority, just as in the case at bar, decided not to go forward with the remaining portion of the contract. The issue, therefore, was whether Clark was entitled to $1 per yard for the some 68,000 yards, plus whatever profit he might have made had the contract been completed so that he might be made whole in damages for the breach by the defendant, or whether he had the right to deem the contract terminated and rescinded and recover in *quantum meruit* the actual reasonable value of the work completed at the time of the contract's termination. The evidence there supported a finding that the geological character of the premises excavated was such that the reasonable value of the some 68,000 yards excavated, largely rock, was substantially more than the base unit price of $1 per yard; and the Court of Appeals held that Clark had the right to recover in *quantum meruit* such actual reasonable value, rather than to rely upon the ordinary contract damages of the amount specified in the contract, less the reasonable cost of completion. The effect of this decision, therefore, was merely to decree as an elective remedy a determination of the value of the work done as against the total contract and to make plaintiff whole for the value of the work done. It is clear that such an apportionment is appropriate. A hypothetical builder who takes a contract for $50,000 to build a house and brings it to enclosure, at which point the owner decides to abandon it, certainly should have the right to recover the $50,000, less what it would have cost him to finish the job so that his profit under the job would thus be preserved to him. The proof, however, in such a situation might be onerous. The builder would have to prove what it would cost him for the plumbing and heating, the electrical work, the plastering, landscaping, utilities and equipment installations, air conditioning, decoration and whatever else had to be done for the completion of the contract, in order to arrive at the damages due pursuant to the contract. The holding of the Court of Appeals, therefore, in *Clark* was merely that such a builder is not limited to the single remedy of damages *ex contractu* and that when such a breach occurs the builder has the right to elect to deem the contract at an end (the term "recission" being, of course, inappropriate, as the contract has already been "terminated" by the unilateral default of the owner). In such event, the builder should be entitled to recover the fair and reasonable value of the work done. While it is clear that a tailor engaged to make a suit, or a cabinet-maker to fashion a chair, may not impose a substantially unfinished job upon a purchaser, it is shocking to the conscience to say that if the builder of the World Trade Center cleared the ground, excavated the foundations and built a structure up to 50 stories, and circumstances made it impossible for him to go forward, the owner would then be entitled to retain several hundred million dollars' worth of work, making no payment therefor. Since materialmen and work-

men depend for their mechanics' liens upon there being a sum due to the general contractor, the impropriety of such a scandalously penal result renders such a doctrine abhorrent in law and conscience. In *Clark*, as in *Smith* v. *Brocton Preserving Co.* (251 App. Div. 102), the ambivalence of the court in articulating the rule of damages in cases such as the one at bar becomes evident. In *Smith*, language was employed to the effect that where an owner terminates a construction contract when the contractor is not in default, the owner is subjected to liability for the value of whatever work was performed by the contractor, regardless of the contract price. Nevertheless, in *Smith* the failure to charge the jury as to the requirement to consider the contract price in determining the fair value of the work done was struck down as erroneous and a verdict of the jury of $2,500 for work on which not more than about $1,000 remained due under the contract price was found to be excessive by the sum of $1,491.60 (the amount of the excess over the contract price). Just so in *Clark*. While the court used the unfortunate and irrelevant term "rescinded" with respect to a contract already terminated by operation of law through the default of the owner and election of the contractor, the court likewise tailored the damages recovered to a sum within the parameter of the original contract. The conflict of the language employed in *quantum meruit* ("rescission", "termination") and the obvious resistance of the courts to ignoring the contract price freely and fairly arrived at between the parties so as to create a windfall profit because of the owner's economic misfortune indicate the need to make clear that no such untoward event is contemplated. On the procedural issue as to whether this action is properly founded in equity, it seems to me clear that the action is grounded in contract, however stated in the pleadings. Plaintiff, in this case the contractor, has already elected to terminate and "rescind" its contract. It does not need a court of equity to permit a rescission when the contract has been abandoned and terminated by the adverse party. There is nothing left to rescind. No judgment of the court is necessary to bring the contract to an end. That is the situation in the case at bar and all that remains to be determined is the damages, pursuant to the alternative remedies at law. The right to a trial by a jury in such a case cannot be aborted merely by a pleading asking for that which has already occurred by operation of law. I do not agree with Special Term that the stage payments shall be deemed conclusive evidence as to the value of the work done. Such payments may well be merely approximated, to be ultimately equalized upon the completion of the contract. In summary, I am in agreement with the majority that plaintiff may recover the fair and reasonable value of the work actually done. In my view, however, such damages must be limited to a fair apportionment of the work done against the total contract price and no penalty is permissible through redetermination of the original contract price. In short, the very term "damages" means the out-of-pocket expense actually incurred by reason of a breach of contract (see 5 Corbin, Contracts, § 992, p. 5). It is not intended to award penalties or punitive damages in circumstances such as are present in the instant case.