977 F.2d 720
 18 UCC Rep.Serv.2d 1130
 BAUSCH & LOMB INCORPORATED, Plaintiff-Appellee-Cross-Appellant,
v.
Bernard BRESSLER and Louis Katz, Defendants,
Sonomed Technology, Inc., Defendant-Appellant-Cross-Appellee.
 Nos. 1529, 1711, Dockets 92-7034, 92-7130.
 United States Court of Appeals,
Second Circuit.
 Argued May 28, 1992.
Decided Oct. 9, 1992.
 
 Harry P. Sacks, New York City (Jeffrey A. Aronson, Steven J. Brill, Christopher L. Gallinari, Sacks Montgomery, P.C., of counsel), for plaintiff-appellee-cross-appellant.
 David A. Barrett, New York City (William F. Duker, Duker & Barrett, of counsel), for defendant-appellant-cross-appellee.
 Before: MINER and WALKER, Circuit Judges, and RONEY*, Senior Circuit Judge.
 WALKER, Circuit Judge:
 
 
 1
 This case involves Bausch & Lomb, Inc.'s ("B & L") claims for damages arising from the alleged breach by Sonomed Technology, Inc. ("Sonomed") of a contract whereby B & L agreed to purchase and distribute ophthalmic diagnostic instruments manufactured and supplied by Sonomed. The district court, after a bench trial, entered judgment in favor of B & L in the amount of $555,000 in damages plus interest. On appeal, Sonomed attacks the judgment by challenging: (1) the finding that Sonomed, not B & L, breached the purchase and distribution agreement, (2) the damage award to B & L, and (3) the denial of Sonomed's counterclaims. Sonomed also seeks to amend its pleadings to assert a claim for goods sold and delivered. On cross-appeal, B & L challenges the district court's denial of its damage claim for lost inventory value. For reasons that will be discussed, we affirm the district court's denial of Sonomed's counterclaims, its denial of B & L's claim for lost inventory value and its determination that Sonomed is liable to B & L for breach of contract. We also affirm the district court's disallowance of an amendment to the complaint. However, we vacate in part the district court's damage award.
 
 BACKGROUND
 
 2
 The district court's decision, reported at 780 F.Supp. 943 (E.D.N.Y.1992), includes detailed findings of facts. We will reiterate only those facts necessary for disposition of this appeal.
 
 
 3
 Sonomed develops, manufactures and markets ultrasound devices used for ophthalmologic diagnosis. Sonomed makes two complementary products, the "A-Scan"--which measures distances in the eye--and the "B-Scan"--which provides a two-dimensional image of the eye. B & L is engaged in the optical products business, including the purchase and distribution of ophthalmic devices manufactured by other companies. On December 21, 1984, Sonomed and B & L entered into a sale and distribution agreement (the "1984 Agreement"). Under the terms of the 1984 Agreement, B & L was to become the exclusive world-wide distributor of Sonomed's A-Scan and B-Scan products for a period of three years. In return for the exclusive distributorship rights, B & L paid $500,000 to Sonomed and agreed to make annual minimum purchases of Sonomed's products beginning in 1985.
 
 
 4
 On July 1, 1986, the parties rescinded the 1984 Agreement and entered into a new contract (the "1986 Agreement" or the "Agreement"). Among other things, the 1986 Agreement reduced the size of B & L's exclusive distributorship to a territory including the United States, Puerto Rico and Canada and extended the expiration date of the distributorship until December 31, 1989, two years beyond the expiration date of the 1984 Agreement. It is the 1986 Agreement that is largely at issue in this case. Unless otherwise indicated, the contract provisions we refer to are those of the 1986 Agreement.
 
 
 5
 Section 10.01 provided that B & L would be granted a license to self-manufacture A-Scans and B-Scans if Sonomed failed to make a timely delivery of products to B & L and failed to cure such a default within 90 days after receiving notice. The parties do not dispute that, under such circumstances, B & L would be relieved of its duties to purchase products from Sonomed. Pursuant to § 10.02, B & L would pay Sonomed royalties for any self-manufactured products, with a minimum royalty computed in accordance with the Agreement's product purchase requirements.
 
 
 6
 Section 8.02 provided that, upon a material breach, the non-breaching party could give notice of its intention to terminate the Agreement. The breaching party then had 30 days to cure the breach. Failing a timely cure, the Agreement would terminate.
 
 
 7
 Section 12.07 stated that the $500,000 payment made by B & L to Sonomed in connection with the 1984 Agreement constituted a "prepaid royalty" and that "[i]n the event of any dispute with respect to this Agreement, such payment shall be deemed to be payment for exclusive distribution rights." Section 3.04 provided that an additional $55,000 payment by B & L to Sonomed was a "down payment" to be refunded by Sonomed upon "the termination of [the] Agreement...."
 
 
 8
 Between July 21, 1986 and December 17, 1987, Sonomed violated the terms of the Agreement by selling its products in B & L's exclusive territory. During 1987, Sonomed hired distributors for its products in Canada and Puerto Rico and began to set up a sales force in the Northeastern United States. B & L apparently did not learn of these violations until it conducted discovery in this litigation.
 
 
 9
 In a letter to Sonomed dated April 15, 1987, B & L complained that Sonomed had fallen behind in its deliveries of B-Scans and that B & L was unable to fill orders it had received. B & L attached to the letter a schedule comparing B & L's purchase orders with Sonomed's product deliveries, and asserted that Sonomed was in default of its delivery obligations pursuant to the Agreement. The April 15 letter triggered the default notice provision of § 10.01 that gave Sonomed 90 days to cure the default.
 
 
 10
 In a May 14 letter, Sonomed agreed that it had failed to make timely deliveries of B-Scans to B & L, stating that it was "in a backorder situation with B-Scans, being behind 47 units", but would be able to work off the entire backlog within three months. Sonomed annexed to its letter a table indicating a shortfall of 18 products out of 48 ordered by B & L for delivery during the fourth quarter of 1986 and 29 out of 44 products ordered for delivery during the first quarter of 1987. Even taking into account a contractual provision permitting a 15 percent delivery shortfall, Sonomed was clearly in default.
 
 
 11
 Between May 14 and October 23, Sonomed and B & L tried to work out their difficulties, conferring and exchanging memoranda on the question of whether Sonomed had cured its default within the 90 day cure period. B & L also examined its own delivery records to try to determine whether Sonomed had timely cured its delivery default.
 
 
 12
 At the same time that B & L was expressing concern over Sonomed's ability to provide timely supplies of new products, an October 13 internal B & L memorandum indicated that B & L was itself experiencing problems in selling its existing stock of Sonomed products. The memorandum stated that B & L had over two hundred Sonomed products in stock, that B & L's sales of Sonomed products were declining and that retail prices for competitive ophthalmic instruments were also declining. The district court found that, during 1987, B & L engaged in a crash sales operation and discounted its prices for Sonomed products by as much as 40 percent.
 
 
 13
 After its internal reviews and communications with Sonomed, B & L concluded that Sonomed had failed to cure its default. Pursuant to the Agreement's terms, on October 23, B & L sent a letter to Sonomed stating that B & L was discharged from its duty to purchase further products and invoking its right to self-manufacture the A-Scan and B-Scan products. The letter stated that B & L planned to continue to sell A-Scans and B-Scans throughout its exclusive territory "in accordance with the provisions of the Agreement."
 
 
 14
 At a November 2 meeting with B & L, Sonomed asserted, based on supporting documentation, that Sonomed had timely cured its default. A November 3 letter from Sonomed's counsel reiterated this assertion and stated that the Agreement remained in full force "except to the extent that [B & L had] repudiated it...." Sonomed asserted that B & L's refusal to purchase products from Sonomed "constitutes an anticipatory breach and repudiation of the Agreement." Sonomed claimed that B & L's alleged repudiation occurred one week prior to a meeting of ophthalmologists, a "critical selling period" for Sonomed products, and contended that B & L's "decision to advise us, one week before the Academy meeting, of your repudiation of your obligations does not afford us the luxury of waiting 30 days while you reconsider your ill-advised decision." Sonomed also demanded that B & L provide "assurance of your willingness to live up to all the terms of the Agreement by 1:00 P.M. Friday, November 6", two days following B & L's receipt of the November 3 letter.
 
 
 15
 B & L did not respond to the November 3 letter by November 6 and, on November 9, Sonomed served B & L in an action filed in New York State Supreme Court. Thereafter, B & L conducted a comprehensive inventory and a second review of its purchase and delivery records. Finding its records to be in disarray, making it difficult for B & L to establish that Sonomed had failed to timely cure its default, B & L then reversed course. In a November 17 letter and by telephone the same day, B & L withdrew its October 23 letter and informed Sonomed that it intended to resume purchases of products from Sonomed.
 
 
 16
 In a November 19 letter to B & L, Sonomed refused to accept B & L's withdrawal of the October 23 letter, stating that "[t]he time for a retraction of a repudiation such as yours has passed. It ended at 1:00 P.M. on November 6, 1987, when you failed to respond to our November 3 letter." Sonomed declared that B & L's failure to withdraw the October 23 letter within the two day period terminated the Agreement. Sonomed stated that it would no longer accept or fill product orders from B & L and intended to market Sonomed products itself. A November 25 letter from Sonomed's counsel to B & L repeated Sonomed's refusal to accept B & L's proffered retraction of the October 23 letter, stating: "[s]uffice it to say we believe you acted too late."
 
 
 17
 On December 9, B & L entered into a contract with Cambridge Instrument Company ("Cambridge") conveying to Cambridge B & L's ophthalmic instruments business. B & L assigned to Cambridge B & L's rights and obligations under the Agreement. Cambridge reassigned to B & L its claims against Sonomed for breach of the Agreement. Cambridge later sold its remaining inventory back to Sonomed for a price of $345,014, which was $1,080,377 less than the amount that B & L originally paid Sonomed for the same inventory.
 
 
 18
 On November 30, 1987, B & L commenced this action, asserting claims for antitrust violations and for breach of contract against Sonomed. Sonomed counterclaimed for breach of contract, common law fraud and fraudulent inducement of contract and dropped its state court action. The district court denied motions by both parties for partial summary judgment. At trial, the district court dismissed B & L's antitrust claim.
 
 
 19
 Following trial, the district court entered judgment for B & L on certain of its breach of contract claims, and against Sonomed on its counterclaims. Specifically, the court found two separate breaches by Sonomed.
 
 
 20
 First, the court determined that Sonomed breached the Agreement by selling products in B & L's exclusive territory. This claim was not challenged at trial. Sonomed's agents admitted that Sonomed sold products in B & L's territory.
 
 
 21
 Second, the district court determined that Sonomed wrongfully terminated the Agreement. The district court found that Sonomed failed to timely cure its product delivery default and that B & L acted properly in asserting its rights to cease purchasing and to self-manufacture Sonomed products. Thus, the district court concluded that Sonomed breached by refusing to perform its contractual duties and by terminating the Agreement in response to B & L's invocation of its self-manufacturing rights. The district court also found that, even if Sonomed had cured its delivery default and B & L thus improperly invoked the right to self-manufacture, Sonomed would remain liable for material breach because it failed to provide B & L with the 30 day notice of termination required by § 8.02.
 
 
 22
 The district court denied B & L's claims for lost profit damages based on sales by Sonomed in B & L's exclusive territory. The court found that B & L offered no evidence linking Sonomed's sales to profits allegedly lost by B & L. The district court granted B & L $55,000, a return of the down payment made by B & L pursuant to § 3.04, which provided for return of the payment upon termination of the Agreement. The court also awarded B & L $500,000, the amount of the "prepaid royalty" paid to Sonomed under the 1984 Agreement and described in § 12.07 of the Agreement as a payment for B & L's right to distribute Sonomed products. The court reasoned that Sonomed's breaches "vitiated" B & L's exclusive distribution right and stated that return of the payment made whole and "reasonably compensated" B & L. However, the district court denied B & L's claim for $1,080,377, the difference between the amount paid by B & L for its residual inventory of Sonomed products and the amount later paid by Sonomed to repurchase the inventory from Cambridge. The court found that B & L failed to demonstrate that these alleged damages were within the reasonable contemplation of the parties at the time they entered into the Agreement or that the goods were resold to Sonomed in a substantially similar condition as when purchased by B & L. Finally, the district court denied B & L's claim for punitive damages. Sonomed's appeal and B & L's cross-appeal followed.
 
 DISCUSSION
 
 23
 The parties do not dispute that New York law, as provided in the Agreement, governs the contract claims at issue. Because the Agreement concerns the purchase, sale and distribution of goods, the New York Uniform Commercial Code (N.Y.U.C.C. §§ 1-101, et seq. (McKinney 1964 & Supp.1992)) applies.
 
 1. Breach of Contract
 
 24
 Sonomed accepts the district court's finding that, by selling Sonomed products in B & L's exclusive territory, it breached the Agreement. However, Sonomed challenges the finding that it materially breached the Agreement by wrongfully refusing to perform its contractual duties and terminating the Agreement.
 
 
 25
 Sonomed acknowledges that it was in default of its product delivery obligations on April 15, 1987, the date of B & L's letter noticing the default. But Sonomed claims that it remedied its default within § 10.01's 90 day cure period and, therefore, when B & L invoked its right to cease purchasing and to self-manufacture Sonomed products it acted wrongfully. By improperly invoking the right to self-manufacture, Sonomed reasons, B & L repudiated its contractual obligations.
 
 
 26
 We do not have to reach the question of whether Sonomed failed to timely cure its product delivery default, and thereby permitted B & L to invoke the Agreement's self-manufacture provision. Even if B & L did act improperly in invoking the self-manufacturing provision, Sonomed committed a material breach by terminating the Agreement upon two days notice to B & L in contravention of § 8.02's 30 day notice period and by refusing to accept B & L's timely withdrawal of its alleged repudiation.
 
 
 27
 Sonomed contends that by its November 3 letter it chose to respond to B & L's October 23 self-manufacture letter which it considered (wrongly in the district court's view) to be an act of repudiation amounting to a material breach by pursuing its rights under U.C.C. § 2-609 to demand adequate assurance of performance. Under § 2-609, "[w]hen reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance...." N.Y.U.C.C. § 2-609(1). After it receives a justified demand for assurances, a party must provide adequate assurances within a reasonable time, or else become liable for breach. See id. at § 2-609(4). Sonomed argues that the two day ultimatum it gave to B & L was commercially reasonable because of the upcoming meeting of ophthalmologists which was critical to the sales of Sonomed products. In fact, if there was no contractual provision to the contrary, Sonomed would not have had to provide B & L with any notice prior to cancelling the Agreement. U.C.C. § 2-703 permits a party to immediately cancel a contract in response to any material breach, including a repudiation. See id. at §§ 2-610; 2-703(f).
 
 
 28
 But Sonomed's argument is undermined by the terms of the Agreement. As U.C.C. § 1-102 states, "the effect of provisions of this Act may be varied by agreement, except as otherwise provided in this Act...." Id. at § 1-102(3). Section 8.02 was just such a variance. It limited the ability of an aggrieved party to terminate the Agreement by providing that, upon the occurrence of a material breach, the aggrieved party could cancel the Agreement only upon 30 days notice during which time the breaching party could attempt to effect a cure. Thus, Sonomed breached the Agreement by issuing an ultimatum on November 3, effective November 6, and rejecting B & L's attempt on November 17, within the 30 day notice period, to cure its alleged repudiation by withdrawing its October 23 letter. "Under New York law,.... [w]here the contract specifies conditions precedent to the right of cancellation, the conditions must be complied with." Consumers Power Co. v. Nuclear Fuel Servs., Inc., 509 F.Supp. 201, 211 (W.D.N.Y.1981); see also Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 518-19 (2d Cir.1989) (affirming finding of breach upon failure to terminate contract in accordance with notice provision); General Supply & Constr. Co. v. Goelet, 241 N.Y. 28, 34, 148 N.E. 778, 779 ("The termination of the contract in this case without the required previous notice and without a certificate from the architect in accordance with the terms of the contract was wrongful."), remittitur amended, 241 N.Y. 507, 150 N.E. 532 (1925). We believe the district court correctly determined that Sonomed materially breached the Agreement by failing to abide by the Agreement's 30 day notice provision.
 
 
 29
 Sonomed seeks to extricate itself from the notice requirement of § 8.02 by arguing that the provision should be read to exclude repudiations. Yet, Sonomed offers no reason for this court to disregard the provision's plain language which states that the notice requirement is generally applicable to "material breach[es]."
 
 
 30
 Sonomed cites two cases from other jurisdictions in which courts found that aggrieved parties were not under a duty to abide by contractual notice provisions when cancelling contracts in response to repudiations. See Solitron Devices, Inc. v. Honeywell, Inc., 842 F.2d 274, 278 (11th Cir.1988); United States v. Digital Prods. Corp., 624 F.2d 690, 694 (5th Cir.1980). Both, however, are inapposite. In each case, the repudiating party expressly disavowed any further duties under the contract at issue, in effect declaring the contract at an end. Because it would have been futile for the aggrieved parties in Solitron and Digital to provide the breaching parties with opportunities to cure their repudiations, the courts found that the failures to provide notice and opportunity to cure were excused. See, e.g., Allbrand Discount Liquors, Inc. v. Times Square Stores Corp., 60 A.D.2d 568, 568, 399 N.Y.S.2d 700, 701 (2d Dep't 1977) ("[o]nce it becomes clear that one party will not live up to the contract, the aggrieved party is relieved from the performance of futile acts...."), appeal denied, 44 N.Y.2d 642, 405 N.Y.S.2d 1026, 376 N.E.2d 935 (1978).
 
 
 31
 By contrast, in its October 23 letter, B & L did not unilaterally terminate the Agreement; rather, B & L invoked its rights under the Agreement not to purchase further products from Sonomed and to self-manufacture following Sonomed's default. The district court found that Sonomed and B & L had a good faith difference of opinion with respect to whether Sonomed had cured its default. Under these circumstances, it would not have been futile for Sonomed to provide 30 days notice to B & L prior to terminating the Agreement. Indeed, the fact that B & L attempted to withdraw its alleged repudiation within the 30 period demonstrates non-futility.
 
 
 32
 Because we affirm the district court's finding that Sonomed, not B & L, is liable for breach of the Agreement, we also affirm the court's denial of Sonomed's breach of contract counterclaims. We also affirm the district court's denial of Sonomed's request to amend its pleadings to assert a contract claim for goods sold and delivered. This claim is inconsistent with the district court's finding that B & L did not breach the Agreement.
 
 2. Damages
 
 33
 Having found no error in the district court's liability determinations, we turn to the appeals from the district court's damage award. Sonomed challenges the $500,000 damage award to B & L. B & L challenges the district court's refusal to award it the $1,080,377 difference between what it paid for inventory it transferred to Cambridge and the price paid by Sonomed upon its repurchase of the inventory.
 
 
 34
 a. The $500,000 Award
 
 
 35
 At trial, B & L made claims for lost profits, and sought to prove these alleged damages by pointing to the profits Sonomed realized through its violative sales before and after Sonomed terminated the Agreement. However, B & L offered no evidence tending to prove that it would have made the same sales--or realized the same profits--as Sonomed absent Sonomed's breaches of the Agreement. New York law requires that a plaintiff prove with a reasonable degree of certainty that any claimed loss of profits was caused by the defendant's breach. See Care Travel Co. v. Pan Am. World Airways, Inc., 944 F.2d 983, 994 (2d Cir.1991); Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 132, 493 N.E.2d 234, 235 (1986) (per curiam). The district court thus denied these claims as speculative, a determination B & L does not challenge on appeal.
 
 
 36
 The district court found, as an alternative, non-speculative measure of B & L's loss the $500,000 "prepaid royalty" paid by B & L under the 1984 Agreement in return for the right to purchase and serve as exclusive distributor of Sonomed's products. The court stated that B & L was denied its full rights to exclusive distribution, first, because of Sonomed's sales in B & L's territory while the Agreement was still in force, and, second, because of Sonomed's repudiation of the Agreement. Thus, the district court reasoned, "in fairness and in accordance with the law of contract damages, the defendant Sonomed should return the $500,000."
 
 
 37
 In granting B & L the $500,000 award, the district court may have been seeking to apply the doctrine of expectation damages. This doctrine gives force to the provisions of a contract by placing the aggrieved party in the same economic position it would have been in had both parties fully performed. See Trans World Metals, Inc. v. Southwire Co., 769 F.2d 902, 908 (2d Cir.1985); Western Geophysical Co. of Am. v. Bolt Assocs., Inc., 584 F.2d 1164, 1172 (2d Cir.1978); Menzel v. List, 24 N.Y.2d 91, 97, 298 N.Y.S.2d 979, 983, 246 N.E.2d 742, 745 (1969); 3 E.A. Farnsworth, Farnsworth on Contracts § 12.8, at 186 (2d ed. 1990). If it awarded the $500,000 as expectation damages, we think the district court erred. Although to be sure B & L did not receive the full benefits of the distribution rights it contracted for, it does not follow that B & L would have realized a $500,000 return if the contract had been fully performed. There is simply no evidence connecting this $500,000 to any profit that B & L would have received had Sonomed fully performed the Agreement. Thus, the district court's award cannot be sustained pursuant to an expectation theory of recovery.
 
 
 38
 The district court suggested that its award of the $500,000 payment might alternatively be appropriate pursuant to the doctrine of reliance damages. Under this doctrine, a plaintiff may recover "his expenses of preparation and of part performance, as well as other foreseeable expenses incurred in reliance upon the contract." J. Calimari & J. Perillo, Contracts § 14-9, at 603 (3d ed. 1987); see also L. Albert & Son v. Armstrong Rubber Co., 178 F.2d 182, 190-91 (2d Cir.1949). However, the alternative reliance "measure of damages rests on the premise that the injured party's reliance interest is no greater than the party's expectation interest." 3 Farnsworth, supra, § 12.16, at 265. And courts will not "knowingly put the plaintiff [receiving a reliance recovery] in a better position than he would have occupied had the contract been fully performed." Fuller & Perdue, The Reliance Interest in Contract Damages (Pt. 1), 46 Yale L.J. 52, 59 (1936); see L. Albert & Son, 178 F.2d at 191. Thus, a reliance recovery will be offset by the amount of "any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been fully performed." Restatement (Second) of Contracts § 349 (1979); see Farash v. Sykes Datatronics, Inc., 59 N.Y.2d 500, 504, 465 N.Y.S.2d 917, 919, 452 N.E.2d 1245, 1247 (1983). If the breaching party establishes that the plaintiff's losses upon full performance would have equalled or exceeded its reliance expenditures, the plaintiff will recover nothing under a reliance theory.
 
 
 39
 The district court did not address the "losing contract" limitation upon awards of reliance damages, and thus, as far as we can tell, did not examine what revenues B & L would have received absent Sonomed's breach. Portions of the district court opinion, in fact, seem to offer support for Sonomed's contention on appeal that the Agreement was a losing contract for B & L, entitling Sonomed to an offset of all or part of the $500,000 payment under a reliance theory. The district court found that during 1987 B & L was having difficulty selling Sonomed products, was engaged in a "massive crash sales operation" and was discounting its prices by as much as 40 percent. We see no justification on this record for an award of the $500,000 as reliance damages.
 
 
 40
 We believe, however, that B & L may be entitled to a damage award by way of restitution, a remedies doctrine not addressed by the district court. The U.C.C. generally permits a plaintiff to elect to recover restitutionary damages for material breach of contract. See N.Y.U.C.C. § 2-711(1); 1 G.E. Palmer, The Law of Restitution § 4.15 (1978). The doctrine of restitution is premised upon the equitable principle that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution § 1 (1937). Upon a demonstration that a defendant is liable for material breach, the plaintiff may recover "the reasonable value of services rendered, goods delivered, or property conveyed less the reasonable value of any counter-performance received by him." Calimari & Perillo, supra, § 15-4, at 651; see United States v. Zara Contracting Co., 146 F.2d 606, 610 (2d Cir.1944); Farash, 59 N.Y.2d at 506, 465 N.Y.S.2d at 920, 452 N.E.2d at 1248. Because the doctrine of restitution looks to the reasonable value of any benefit conferred upon the defendant by the plaintiff, and is not governed by the terms of the parties' agreement, restitution is available even if the plaintiff would have lost money on the contract if it had been fully performed. See In re Estate of Montgomery, 272 N.Y. 323, 326-27, 6 N.E.2d 40, 41 (1936); Paterno & Sons, Inc. v. Town of New Windsor, 43 A.D.2d 863, 864, 351 N.Y.S.2d 445, 447-48 (2d Dep't 1974); 3 Farnsworth, supra, § 12.19, at 302.
 
 
 41
 Following a restitution theory, B & L would be entitled to recover as much of the $500,000 payment it made to Sonomed as it can show unjustly enriched Sonomed. We reject Sonomed's contention that an award of any portion of the $500,000 payment is precluded by the terms of the Agreement which states that the prepaid royalty "under no circumstances is refundable to B & L". The terms of the Agreement do not control an award of restitution.
 
 
 42
 However, restitution does not permit B & L to recover the entire $500,000 payment. B & L paid the $500,000 for the right to distribute Sonomed products over the duration of both agreements and it had that right from early 1985 (under the rescinded 1984 Agreement) until Sonomed's termination of the Agreement in 1987. These several years of distribution rights constitute a benefit the value of which must be offset against the $500,000 paid.
 
 
 43
 In order to determine how much of the $500,000 payment Sonomed must pay to B & L under a restitution theory, the district court must ascribe a value to the distribution right B & L enjoyed for the years preceding the Agreement's termination and then use it as an offset to the $500,000. As set forth above, the reasonable value of the benefit unjustly received, not the contract price, determines the amount of an award in restitution. However, the contract may provide probative evidence of the value of the benefit. See United States v. Western States Mechanical Contractors, Inc., 834 F.2d 1533, 1552 (10th Cir.1987); Constantino v. American S/T Achilles, 580 F.2d 121, 122-23 (4th Cir.1978); Calimari & Perillo, supra, § 15-4, at 652. Indeed, in the absence of a readily available market price, the value that the parties ascribed to a benefit in their contract may be the best valuation measure available to the court. See, e.g., 12 S. Williston & W.H.E. Jaeger, Williston on Contracts §§ 1480, 1482 (3d ed. 1970) (contract price is important evidence of value of performance to defendant).
 
 
 44
 It may be that the $500,000 price that B & L agreed to pay and Sonomed agreed to accept for the exclusive right to distribute Sonomed products for an approximately five year period--from the commencement of the 1984 Agreement until the date set for termination of the Agreement--offers the best evidence available of the reasonable value of the right. If the district court on remand determines this to be the case, it would then be appropriate to pro-rate the $500,000 to determine the value of the right actually received and exercised by B & L.
 
 
 45
 The district court should also take into account the fact that B & L did not receive the exclusive distributorship promised by Sonomed in the Agreement. As set forth above, Sonomed sold its products in various parts of B & L's exclusive territory even before it terminated the Agreement. These violative sales may have diminished the value of the benefit B & L received, although it may be difficult to calculate the amount of the diminution. The profits Sonomed obtained through its violative sales may, however, provide some evidence of the diminished value of the distribution right.
 
 
 46
 We thus vacate this portion of the district court's award and direct the court on remand to grant a restitutionary award to B & L consistent with this opinion.
 
 
 47
 b. Lost Inventory Value
 
 
 48
 On its cross-appeal, B & L challenges the district court's denial of its claim for $1,080,377, the difference between the amount B & L paid for certain inventory it purchased from Sonomed and the amount that Sonomed paid to Cambridge upon its repurchase of that inventory in 1988. B & L contended at trial that the lower resale price reflected a diminution in the market value of the inventory attributable to Sonomed's breach of the Agreement. The district court denied this claim on two grounds, first, that B & L failed to establish that B & L's breach caused the alleged losses, and, second, that the damages were not reasonably foreseeable. We need reach only the first of these grounds.
 
 
 49
 A plaintiff seeking damages for breach of contract may not recover "for loss beyond an amount that the evidence permits to be established with reasonable certainty." Restatement (Second) of Contracts, supra, § 352; see Sevenson Envtl. Servs., Inc. v. New York State Thruway Auth., 149 Misc.2d 268, 272, 561 N.Y.S.2d 523, 525 (Ct.Cl.1990). The plaintiff thus must demonstrate that the damages were caused by and are "directly traceable to the [defendant's] breach...." Kenford, 67 N.Y.2d at 261, 502 N.Y.S.2d at 132, 493 N.E.2d at 235. The rule of certainty is enforced most strongly where, as here, the plaintiff seeks to recover for a loss on a transaction separate from the transaction that gave rise to the breach. Calimari & Perillo, supra, § 14-8, at 600.
 
 
 50
 The district court concluded that B & L did not make the requisite showing of causation. The court found that B & L failed to establish that the inventory was in substantially similar physical condition at the time the products were purchased from Sonomed and when the products were resold. The district court noted that both B & L and Cambridge had cannibalized some of the inventory for spare parts after purchasing the products from Sonomed. We do not believe this finding to be clearly erroneous. However, even if it were, B & L was unable at trial to establish with the requisite certainty that the alleged drop in the market value of the inventory was attributable to Sonomed's breach. The district court found that, even before Sonomed's breach, B & L was having trouble marketing Sonomed products and was selling some of the goods at a 40 percent discount. This finding not surprisingly posed a substantial hurdle to B & L's attempt to place the inventory's lost value at Sonomed's doorstep. We agree with the district court's determination that B & L is not entitled to a recovery on its lost inventory value claim.
 
 CONCLUSION
 
 51
 For the reasons set forth above, the judgment of the district court is affirmed in part and vacated in part and remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Hon. Paul H. Roney, Senior Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation