**ED KIMBER HEATING AND COOLING, INC.,**
**Plaintiff,**

v.

**TRAVELERS CASUALTY AND SURETY CO., Defendant.**

**No. 3:03CV2111(SRU).**

United States District Court,
D. Connecticut.

Jan. 26, 2006.

---

Gregory Robert Faulkner, Gregory K. Holness, Brown Raysman Millstein Felder & Steiner, Hartford, CT, Harold M. Pressberg, Norton & Christensen, Goshen, NY, for Plaintiff.

Andrea Barton Reeves, Matthew M. Horowitz, Wolf, Horowitz, Etlinger & Case, Hartford, CT, for Defendant.

### RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

UNDERHILL, District Judge.

On December 1, 2004, the plaintiff, Ed Kimber Heating and Cooling, Inc. ("Kimber"), filed a motion for partial summary judgment, asking the court to dismiss the portion of Travelers Casualty and Surety Co.'s ("Travelers") counterclaim that seeks excess costs of completion.[1] On November 18, 2005, the court heard oral argument by both parties. For the reasons that follow, I grant Kimber's motion for partial summary judgment, dismissing the portion of Traveler's counterclaim seeking excess costs of completion.

### I. Factual Background

The Town of Southington hired Trataros Construction, Inc. ("Trataros") as the general contractor to make additions and alterations to the William H. Hatton School. Travelers issued payment and security bonds as the surety for Trataros. Trataros subcontracted with Kimber, which performed HVAC and plumbing work for the project from March 2002 until February 7, 2003.

---

1. Traveler's counterclaim also seeks compensation for payments made to Kimber's vendors and for the cost of certain corrective work. Kimber is not seeking summary judgment on those portions of the counterclaim, and they are therefore not at issue here.

Trataros made periodic progress payments to Kimber; the last check Kimber received was dated December 10, 2002. Trataros prepared a payment check, dated January 27, 2003, but the check was written on an account requiring approval by Travelers, and Travelers did not sign the check. The parties agree that Trataros did not give Kimber a progress payment in January 2003. Defendant's Local Rule 56(a)(2) Statement at ¶¶ 9–10.

On approximately January 30, 2003, Travelers contracted with Newfield Construction, Inc. ("Newfield") to complete the project, because Trataros could not do so. In February 2003, Newfield employed Action Air Systems to perform work that was within the scope of Kimber's work. Trataros stopped working on the project on February 28, 2003.

The parties agree for purposes of summary judgment that the operative subcontract includes the written subcontract agreement and an October 1, 2002 letter written by Kimber and annotated by Trataros. Ed Kimber's Affidavit in Support of Plaintiff's Application for Partial Summary Judgment Dismissing Counterclaim, Exhibits 1–2. The written subcontract contains a choice-of-law clause that provides: "This subcontract shall be governed by and construed in accordance with the laws of the State of New York." Ed Kimber's Affidavit in Support of Plaintiff's Application for Partial Summary Judgment Dismissing Counterclaim, Exhibit 1 at ¶ 25. The parties agree that the subcontract required Trataros to make monthly progress payments to Kimber. Defendant's Local Rule 56(a)(2) Statement at ¶ 6; Ed Kimber's Affidavit in Support of Plaintiff's Application for Partial Summary Judgment Dismissing Counterclaim, Exhibit 1 at ¶ 2(c). The subcontract requires that, if Kimber breaches the subcontract,

Trataros must give it three days' written notice prior to a declaration of default. Ed Kimber's Affidavit in Support of Plaintiff's Application for Partial Summary Judgment Dismissing Counterclaim, Exhibit 1 at ¶ 8(a).

Travelers did not assume and was not assigned Kimber's subcontract with Trataros. Neither Trataros nor Travelers ever gave Kimber three days' written notice of default.

Kimber is suing Travelers for breach of contract in the amount of $136,987.58.[2] Travelers counterclaimed for $478,000, which includes the excess cost to complete the work under the subcontract, the cost of corrective work, and the cost to reimburse Kimber's vendors. Travelers paid $30,310.70 for corrective work, $37,487.25 for payments to Kimber's vendors, and $313,262 for excess completion costs.

Kimber now seeks summary judgment on the excess completion costs portion of Travelers' counterclaim, alleging that Travelers is not entitled to recover its excess costs from Kimber because its principal, Trataros, breached the subcontract, thereby justifying Kimber's decision to stop performing under the contract.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts

---

2. Kimber also sued Travelers on a quantum meruit theory for $206,864.30.

in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48, 106 S.Ct. 2505. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548; *accord Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

### B. Merits

Travelers primarily argues that Kimber breached the subcontract and that, as a result, Kimber must pay the excess costs of completion of the subcontract. Under the terms of the subcontract, however, Kimber's potential obligation to pay the excess costs of completion arises upon termination for default.[3] Ed Kimber's Affida-

---

**3.** The subcontract at ¶ 8(a) gives the contrac-
tor the right to terminate the contract if the

vit in Support of Plaintiff's Application for Partial Summary Judgment. Dismissing Counterclaim, Exhibit 1 at ¶ 8. It is undisputed that neither Trataros nor Travelers terminated the subcontract with Kimber. Because that contractual prerequisite has not been met, Travelers cannot recover the excess cost of completion from Kimber. Additionally, to the extent that Kimber breached the subcontract, Trataros waived those breaches by continuing to accept Kimber's performance.

In January 2003, Trataros did not tell Kimber it was in breach, nor did Trataros terminate Kimber. Trataros continued to accept the benefits of Kimber's work. Indeed, Trataros actually authorized and prepared a January payment to Kimber. It was Travelers, a party that had not contracted with Kimber and never assumed the contract with Kimber, that prevented payment to Kimber by refusing to sign the check. The fact that Kimber never received payment in January was a material breach of the subcontract, justifying Kimber's decision to stop performing on the project. Even at that time, Trataros/Travelers did not tell Kimber that it was in breach and did not terminate Kimber.

It was not until March 2003, that Travelers began to claim that Kimber had breached the subcontract first, in an attempt to justify Trataros' failure to make the January progress payment. By that time, however, Trataros had already waived any potential breach by Kimber by continuing to accept his performance through January. Similarly, it was not until March 2003 that Travelers concluded that Kimber had overstated the percentage of work completed. Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment at

27. Travelers did not raise those concerns in January 2003, the relevant time period, and therefore, it was not reasonable for Trataros/Travelers to withhold the January 2003 payment in January 2003.

Ultimately, even if Travelers developed evidence after January 2003 that Kimber breached the subcontract or had not completed the percentage of work it claimed to have completed, none of that was known at the time Travelers withheld the January payment.

### 1. Failure to Make a Progress Payment

Trataros' failure to make a progress payment in January 2003 constituted a material breach of the subcontract that excused Kimber's performance under the subcontract. Because Trataros, Travelers' principal, breached the subcontract, and never terminated Kimber, Travelers cannot recover the excess costs of completing the project from Kimber.

 Under New York law, if Kimber was fully performing under the subcontract and Trataros failed to make a progress payment, Kimber would be justified in stopping performance. *Anderson v. Hayes Construction Co.*, 243 N.Y. 140, 148–49, 153 N.E. 28 (1926); *Paterno & Sons, Inc. v. Town of New Windsor*, 43 A.D.2d 863, 351 N.Y.S.2d 445, 447 (2d Dep't 1974) (holding that "the failure of defendant to make the periodic payments due under the contract constituted a breach entitling plaintiff to regard the contract as terminated"). Both parties agree that the last check Kimber received was dated December 10, 2002 and that Kimber did not receive a January 2003 progress payment. Because Kimber was justified in

subcontractor breaches in any of the seven ways listed in ¶ 8(a). Under the terms of the subcontract, if the contractor terminates the

contract, he may then complete the work by hiring someone else and can recover the excess costs from the subcontractor.

stopping performance, Travelers' counterclaim seeking damages from Kimber for failing to perform necessarily fails.[4]

### 2. Possible Breach by Kimber

Travelers, on the other hand, argues that there are a number of reasons why Kimber may not have been justified in stopping performance, and had a continuing legal duty to perform under the subcontract.

Travelers argues that Kimber breached the subcontract, thereby justifying Trataros' failure to make the January 2003 progress payment. Even if Kimber breached the subcontract, however, Trataros waived the breach by continuing to accept performance. Travelers, as surety for Trataros, cannot now assert what its principal already waived.

Travelers argues that Kimber breached the subcontract in the following ways: (1) Ed Kimber was unable to get a P–1 license in Connecticut due to lack of experience, thereby preventing him from being able to do the plumbing work himself; (2) Kimber was also unable to subcontract for someone else with a P–1 license to do the plumbing work; (3) Kimber failed to pay prevailing wages and failed to submit certified payrolls; (4) Kimber paid employees off the books; (5) Kimber failed to obtain workers' compensation insurance that was effective in Connecticut; (6) Kimber paid employees after the mandatory time frame for doing so; (7) some of Kimber's payroll checks for work performed on the project bounced; and (8) Kimber's operating bank account was frozen.

■ There is evidence in the record to support the conclusion that Kimber committed at least some of those breaches.[5] Under New York law, if a subcontractor defaults without substantially performing the subcontract, the contractor is entitled to recover the fair market value of completing the work. Citnalta Construction Corp. v. Caristo Associates Electrical Contractors, Inc., et al., 244 A.D.2d 252, 664 N.Y.S.2d 438, 439 (1st Dep't 1997). The contractor is entitled to the difference between the actual cost to complete the subcontract project and the subcontract price, in addition to the price of change orders to the subcontract. Id.

■ Nevertheless, viewing the evidence in the light most favorable to Travelers, Trataros continued to accept Kimber's performance. By accepting Kimber's per-

---

4. Travelers argues that Kimber's work through December 2002 was only 51% complete, and therefore that Kimber was not entitled to the full amount of the January progress payment. Even assuming that fact as true, Travelers admits that Kimber was owed at least $3,000 for the work performed through December 2002. Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment at 11. The parties agree that Trataros did not make any payment, including a payment for the at least $3,000 owed, to Kimber in January 2003. Moreover, Travelers did not conclude that the work was only 51% complete until March 2003, three months after the payment was due. It was unreasonable to withhold payment in January 2003 when the alleged basis for doing so was not discovered until March 2003.

5. Ed Kimber admitted at his deposition that he was never properly licensed. Kimber Deposition at 142–43; 153. When he undertook the project, he attempted to hire someone who was properly licensed, but he could only hire someone with a P–3 license. The subcontract at ¶ 3 provides that the subcontractor must be fully qualified to perform the work under the subcontract. Under Connecticut law, it is illegal to perform plumbing work of the kind required by the subcontract except under the supervision of a P–1 plumber. Conn. Gen. Stats. §§ 20–330 et. seq. Ed Kimber's deposition includes conflicting evidence about whether Kimber had an effective workers' compensation insurance policy in Connecticut and whether he paid proper wages. Kimber Deposition at 178, 206–09.

formance, even if that performance fell short of the subcontract requirements, Trataros waived its right to terminate the subcontract. Trataros had a continuing duty to perform, and since it did not (by failing to make the progress payment), Kimber was justified in ceasing performance.

In *Intermetal Fabricators, Inc. v. Losco Group, Inc.*, 2000 WL 1154249, *7–8 (S.D.N.Y.2000), the court held that when a contractor continues to accept performance by a subcontractor, it waives its right to terminate the contract. In *Intermetal Fabricators*, the contractor argued "that it properly terminated plaintiff's subcontract ... because plaintiff repeatedly delayed the project, breached various provisions of the subcontract, and refused to fulfill is performance obligations under the subcontract." *Id.* at *5. The subcontractor argued "that its termination was improper because [it] did not breach the subcontract; rather, [the contractor] breached the subcontract by failing to pay plaintiff the monies owed on the project." *Id.*

■ The court held that "a substantial failure to comply with a payment provision in a construction contract constitutes a breach of contract where the conditions precedent have been met, and justifies the non-breaching party's suspension of performance until payment is made." *Id.* at *8 (citing *F & G Mechanical Corp. v. Manshul Construction Corp.*, 1998 WL 849327, at *5 (E.D.N.Y.1998)). In *Intermetal*, the evidence demonstrated that the subcontractor had abandoned work on the project, justifying the contractor's ter-

mination of the contract. However, the subcontractor then argued, and the court agreed, that because the contractor allowed the subcontractor to return to work, the contractor had waived the right to terminate based on any prior breaches.[6] If a party has knowledge of the other party's breach and continues to accept the benefits of the contract, that acceptance constitutes waiver of the right to terminate based on the prior breaches. *Id.* at *7 (citing *Franklin Pavkov Construction Co. v. Ultra Roof. Inc.*, 51 F.Supp.2d 204, 217 (N.D.N.Y.1999)).

Similarly, in this case, even assuming that Kimber breached the subcontract, Trataros continued to accept the benefits of the contract. For example, Travelers alleges that Kimber did not have the proper plumbing license required for the project as early as March 2002 when Kimber first started working on the project. Despite the fact that Kimber never obtained the proper license, Trataros continued to accept Kimber's performance through January 2003.[7] There is also evidence that Kimber breached in other ways, including violating wage laws and workers compensation laws. Travelers alleges that those breaches occurred as early as March 2002, and continued through January 2003. Trataros apparently accepted those breaches, because it continued to accept the benefits of the contract through January 2003, thereby waiving its right to termination based on the breaches that occurred prior to January 2003. Kimber did not receive payment in January 2003. On

---

**6.** Ultimately, in *Intermetal*, the court determined that the contractor had properly terminated the subcontractor. In that case, however, the contractor made repeated demands for the subcontractor to cure its breaches, and when it did not, the contractor properly terminated the subcontractor according to the terms of the subcontract.

**7.** Trataros was willing to make a payment to Kimber during the month of January, and had, in fact, prepared the check for Kimber, but ultimately Travelers refused to sign the check. As a result, Kimber did not receive payment in January.

February 7, 2003, Kimber stopped working on the project.

In hindsight, Travelers argues that Kimber's breaches and under-performance justified Trataros' failure to make a January progress payment. At the time Kimber breached, however, Trataros waived the breaches. Travelers cannot now assert what Trataros already waived. Additionally, Travelers argues that the subcontract at ¶2(h) only requires that the contractor act "reasonably" in withholding payments and that it was reasonable to withhold the January 2003 payment, because Kimber did not complete the percentage of work he claims to have completed. Again, the problem with that argument is that Travelers did not conclude that Kimber had underperformed until March 2003. Therefore, in January 2003, when Trataros/Travelers withheld payment, it was not reasonable to do so.

As a result, the part of Travelers' counterclaim seeking excess costs of completion fails as a matter of law.

### 3. Termination for Convenience

Travelers also argues that I should find that Kimber was terminated for convenience under ¶8(b) of the subcontract. That section, however, only applies when the contractor wrongfully terminates the subcontractor under Article 8 of the subcontract. Here, neither Trataros nor Travelers actually terminated Kimber under Article 8. As a result, the termination for convenience clause does not apply.

### III. Conclusion

Trataros breached the subcontract by failing to pay Kimber in January 2003, and Kimber was therefore justified in stopping performance on February 7, 2003. Travelers, as surety for Trataros can assert only those rights against Kimber that Trataros

itself could assert during the relevant time period. Here, Trataros waived any breaches by Kimber that might have justified terminating the subcontract and not making the January 2003 progress payment. As a result, the portion of Travelers' counterclaim seeking the excess cost of completion fails as a matter of law.

Kimber's motion for partial summary judgment (doc. #38) is GRANTED insofar as it relates to the portion of Traveler's counterclaim seeking recovery for the excess costs of completion of the subcontract.

It is so ordered.