[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14133
_____

D.C. Docket No. 1:11-cv-24142-PAS


FIVE FOR ENTERTAINMENT S.A.,
d.b.a. Five Live Entertainment,

Plaintiff - Counter
Defendant - Appellee
Cross Appellant,


DIEGO HERNAN DE IRAOLA,
Rivadavia 670 Neuqun Argentina,

Plaintiff - Counter
Defendant - Appellee,


versus


EL CARTEL RECORDS, INC.,
RAMON LUIS AYALA RODRIGUEZ,
a.k.a. Daddy Yankee,
ICARO SERVICES, INC.,
d.b.a. Icaro Booking Services,
EDGAR BALDIRI MARTINEZ,

Defendants - Counter

Claimants - Appellants
Cross Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(March 22, 2016)

Before MARCUS, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

Recording artist Daddy Yankee[1] and his record company, El Cartel Records, Inc. ("El Cartel") (collectively, the "Performers"), entered into an engagement with Five for Entertainment S.A. ("Five Live") for Daddy Yankee to perform several concerts in Argentina to be produced by Five Live. This arrangement quickly ran into trouble and ultimately imploded when the Performers, citing Five Live's failure to pay engagement fees in full, cancelled the concerts. A lawsuit followed. Five Live and its president and majority shareholder, Diego Hernan De Iraola, filed suit against the Performers; Daddy Yankee's booking agent, Icaro Services, Inc. ("Icaro"); and Icaro's president, Edgar Baldiri Martinez ("Baldiri"). The amended complaint alleged contract, defamation, and unfair trade practices claims. The Performers, Icaro, and Baldiri responded with counterclaims in the same vein.

_____

[1] Daddy Yankee's real name is Ramon Luis Ayala Rodriguez.

2

Protracted litigation ensued; when no party prevailed on all of its respective claims, all appealed to this court.

Although the parties challenge the ultimate resolution of their various claims on several grounds, we find no reversible error in the underlying proceedings and, as a general matter, affirm based on the district court's well-reasoned orders entered on July 31, 2013 and August 14, 2014.[2]  We find one issue worthy of discussion, however:  whether the district court erred when it ruled that Five Live was not entitled to collect, as reliance damages for breach of contract, reimbursement for certain contract payments made to the Performers because Five Live never requested reliance damages in its amended complaint.  We agree with the district court on this issue as we do on all others and affirm.

## I. BACKGROUND[3]

Daddy Yankee is an internationally well-known, Grammy award-winning singer of Reggaeton music.  In 2010, he partnered with Five Live to present six concerts in Argentina.  The parties memorialized this arrangement in an engagement contract (the "Engagement Contract") between Five Live and the Performers.  Pursuant to the Engagement Contract, the Performers agreed that

---

[2] In adopting the reasoning of the district court, we recognize that some of the arguments the parties raise on appeal were not addressed in the district court's written orders.  Nevertheless, having carefully reviewed the record and the briefs, and with the benefit of oral argument, we reject these arguments without further discussion.

[3] We summarize the facts only to the extent they concern Five Live's breach of contract award.

3

Daddy Yankee would perform six shows, and in return, Five Live agreed to pay a fee of $820,000 in several installments, with payment due in full by November 1, 2010.

After signing the Engagement Contract, Five Live and the Performers decided to expand the concert tour. They entered into a second contract (the "Second Contract"), in which the Performers agreed that Daddy Yankee would perform four additional shows. In exchange, Five Live agreed to pay $480,000, with the full amount due when Daddy Yankee arrived in Argentina.

Problems arose when Five Live struggled to make the agreed-upon installment payments. By November 16, 2010, Five Live had paid only a portion of the $820,000 it owed under the Engagement Contract and a portion of the $480,000 it owed under the Second Contract. The next day, the Performers cancelled the entire tour, citing Five Live's failure to meet the payment deadlines.

Five Live filed suit in district court alleging, as relevant here, that the Performers had breached the Second Contract.[4] The case eventually proceeded to trial. In the liability phase, the jury returned a verdict in favor of Five Live on its

---

[4] Five Live and the Performers each raised breach of contract claims for the Engagement Contract as well. The district court granted summary judgment in favor of the Performers after determining that Five Live had breached the Engagement Contract by failing to make timely payment. The jury awarded the Performers $300,030 in damages for this claim.

4

claim that the Performers breached the Second Contract.[5]  The district court held a pretrial conference after the jury returned its verdict on liability but before the damages phase of the trial.  At the conference, the district court determined that Five Live was entitled to reimbursement of its out-of-pocket expenses but no reliance damages for payments it made on the Second Contract because it failed to disclose that it was seeking such damages, either in its amended complaint or in discovery.  In the damages phase, the jury awarded Five Live $382,130 in damages for the Performers' breach of the Second Contract.

The Performers filed a motion for judgment as a matter of law, arguing that this award was excessive.  Relying on the district court's prior ruling that Five Live was only entitled to reimbursement for its out-of-pocket expenses, the Performers contended that the jury's award exceeded Five Live's expenses and therefore lacked evidentiary support.  Noting its pretrial ruling limiting the types of damages the Performers could collect, the district court agreed and reduced Five Live's damages accordingly.  Five Live and the Performers appealed.

## II. DISCUSSION

Five Live challenges the district court's conclusion that it could not recover, as reliance damages, the payments it made on the Second Contract before the

---

[5] Whereas the Engagement Contract required Five Live to provide payment in full before Daddy Yankee traveled to Argentina, the Second Contract required payment upon his arrival. Because the Performers cancelled the Second Contract *before* payment was due—in contrast to the Engagement Contract, which they cancelled *after* payment was due—the jury found them liable for breach of the Second Contract.

breach.[6]  At the pretrial conference on damages, the district court determined that Five Live could not recover reliance damages because it had failed to disclose in its amended complaint that it was seeking such damages.  We review the district court's pretrial ruling for abuse of discretion.  *See Lloyd v. Prof'l Realty Servs., Inc.*, 734 F.2d 1428, 1432 n.12 (11th Cir. 1984) (noting that, on appeal, we consider whether a district court's pretrial ruling is "an abuse of the broad discretion accorded the trial judge to control pretrial procedures").  "[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment."  *Rasbury v. IRS (In re Rasbury)*, 24 F.3d 159, 168 (11th Cir. 1994) (internal quotation marks omitted).

The relevant inquiry on appeal thus concerns whether the district court abused its discretion in precluding Five Live from seeking, as reliance damages, reimbursement for payments it made under the Second Contract.  We find no abuse of discretion in the court's decision.

---

[6] It is unclear which of two district court decisions Five Live challenges on appeal: (1) the pretrial ruling that Five Live could not recover payments it made on the Second Contract or (2) the order granting judgment as a matter of law and reducing Five Live's award on its breach of contract claim to reflect only out-of-pocket expenses.  Although Five Live never expressly identifies which ruling it is challenging, its arguments on appeal principally concern the adequacy of its damages pleading and whether the Performers had notice of the types of damages it was seeking—issues the district court addressed in the pretrial ruling.  Insofar as the district court referenced those issues in its order granting judgment as a matter of law, it did so to explain why its calculation of the proper amount of damages was in accordance with that ruling.  To the extent that Five Live challenges the district court's calculation of Five Live's adjusted breach of contract award in the order granting judgment as a matter of law, we reject that argument.  Five Live identifies no error in the district court's calculations.

New York law[7] recognizes the doctrine of reliance damages, which entitles the party prevailing on a breach of contract claim to collect "expenses of preparation and of part performance, as well as other foreseeable expenses incurred in reliance upon the contract." *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 729 (2d Cir. 1992) (internal quotation mark omitted).  Reliance damages, however, "will be offset by the amount of any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been fully performed." *Id.* (internal quotation marks omitted).

The confusion regarding which remedies Five Live sought for breach of the Second Contract began with the amended complaint, which contained two separate breach of contract claims.   The first, Count One, concerned the Performers' purported breach of the Engagement Contract.  The second, Count Two, concerned their breach of the Second Contract.  In Count One, Five Live alleged, among other things, that the Performers had failed to reimburse approximately $800,000 in payments Five Live made under the Engagement Contract.  In contrast, Count Two contained no allegation that the Performers had failed to reimburse Five Live for

---

[7] The parties do not dispute that, as provided in the Second Contract, New York law governs the claim at issue.

7

payments made.  Incidentally, in neither count did Five Live ever explicitly identify the manner of damages it was seeking.[8]

Although the amended complaint alleged that the Performers failed to reimburse Five Live for payments made pursuant to the Engagement Contract only, in the liability phase Five Live presented evidence that it had paid $219,980 on the Second Contract.  Then, at the pretrial conference on damages, the Performers argued (and the district court agreed) that the amended complaint failed to apprise them adequately that Five Live sought reimbursement for payments made under the Second Contract as a remedy for breach.  Five Live contends that it clearly sought reimbursement for all payments made to the Performers, regardless of which contract each payment specifically concerned.  Five Live notes, in particular, that the $800,000 figure cited in the amended complaint was comprised of payments made under both the Engagement Contract and the Second Contract.

Although we agree with the Performers that the language of the amended complaint does not clearly reveal whether Five Live sought reimbursement for payments made under the Second Contract, it is precisely because of this ambiguity that we find no abuse of discretion in the district court's decision.  Five Live never explicitly stated—either in its amended complaint or in discovery—that

_____

[8] In both counts, Five Live merely "demand[ed] a judgment comprising compensatory and punitive damages in an amount to be determined at trial."  Am. Compl. at 23, 26 (Doc. 35) ("Doc." refers to the docket entry in the district court record in this case).

8

it sought reimbursement for payments it made in reliance on the Second Contract.[9] Indeed, it alleged no facts indicating that it made payments on the Second Contract.  Five Live also never attempted to amend the complaint to request reliance damages after realizing it had made payments on the Second Contract. Nor did Five Live amend its initial disclosures or subsequent discovery responses to identify the damages it sought on each claim.  Although it may have been possible to infer from the amended complaint Five Live's intent to seek reimbursement of all payments under both contracts, nothing in the amended complaint or Five Live's discovery responses compelled the district court to draw that inference.  As such, the district court did not abuse its discretion in determining that Five Live failed to give the Performers adequate notice of Five Live's intent to seek reimbursement.  *Cf. Jones v. Childers*, 18 F.3d 899, 909 (11th Cir. 1994) (holding district court did not abuse its discretion when it refused to allow party to amend its pleadings after close of discovery and after trial was set).

We also find no error in the district court's reasoning that, as a result of Five Live's failure to provide the Performers with adequate notice of its intent to seek reliance damages**,** the Performers never had an opportunity to take discovery on potential defenses to the recovery of reliance damages.  To the extent the

---

[9] In its initial discovery disclosures, Five Live only made broad reference to seeking reimbursement for "monies paid by [Five Live] to [the Performers]."  Pl.'s Initial Disclosures at 6 (Doc. 267-1).

9

Performers were unaware that Five Live sought reimbursement for payments made on the Second Contract, they were unable to conduct discovery concerning potential offsets to those payments.  Although some of that discovery may have overlapped with discovery the Performers had already conducted or would have conducted in any event, the district court made no clear error of judgment in deciding that such discovery was inferior to the targeted inquiry the Performers could have conducted had they adequately been apprised of Five Live's intent to seek reliance damages.

### III. CONCLUSION

In sum, we find no reversible error in the underlying proceedings and therefore affirm the judgment of the district court.

**AFFIRMED.**

10