15-3214-cv
*Ritchie Risk-Linked Strategies et al. v. Coventry First LLC et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of December, two thousand sixteen.

Present:
> DEBRA ANN LIVINGSTON,
> DENNY CHIN,
> SUSAN L. CARNEY,
>     *Circuit Judges.*

———————————————————————

RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND), LIMITED, RITCHIE RISK-LINKED STRATEGIES TRADING (IRELAND) II, LIMITED,

> *Plaintiffs-Counter-Defendants-Appellants*,

> v.                                                     15-3214

COVENTRY FIRST LLC, LST I LLC, MONTGOMERY CAPITAL, INC.

> *Defendants-Counter-Claimants-Appellees*,

THE COVENTRY GROUP, INC.,

> *Defendants-Counter-Claimants*.[*]

———————————————————————

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

1

For Plaintiffs-Counter-Defendants-Appellants: ERIC S. OLNEY (Alexandra A.E. Shapiro, Fabien Thayamballi, *on the brief*), Shapiro Arato LLP, New York, New York

For Defendants-Counter-Claimants-Appellees: ALLISON RUSHING (David A. Forkner, Kenneth J. Brown, C. Bryan Wilson, Jason Wu, *on the brief*), Williams & Connolly LLP, Washington, DC

Appeal from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Ritchie Risk-Linked Strategies Trading (Ireland), Limited ("Ritchie I") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited ("Ritchie II"; collectively, "Ritchie") appeal from the entry of judgment against them on all their claims following a bench trial before the United States District Court for the Southern District of New York (Rakoff, *J.*). Ritchie contends that (1) the district court clearly erred in failing to find that certain testimony demonstrated that the New York Attorney General's office (the "NYAG") had threatened an action against LST I LLC ("LST"), placing LST in breach of its warranty under its agreements with Ritchie I and II (the "Purchase Agreements") that, to its knowledge, no legal action or proceeding had been threatened against it (the "No Proceedings Warranty"); (2) the district court improperly held that Ritchie had waived its claims by failing to provide the notice required by the Purchase Agreements' "Notice and Waiver Provision"; and (3) the district court improperly entered judgment on all of its claims contrary to the terms of the pre-trial order. On appeal following a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42,

51-52 (2d Cir. 2011). We may affirm the district court's judgment on any ground apparent from the record. *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 49 (2d Cir. 2010). In this order, we assume the parties' familiarity with the facts, the procedural history of the case, and the issues on appeal.

### A. Background

Coventry First LLC ("Coventry First") is a leading participant in the secondary market for life insurance, or the "life settlement" market, purchasing high-value life insurance policies from individual policyholders and then reselling these policies to investors. LST is an affiliate of Coventry First. Rather than purchasing life insurance policies directly from policyholders, termed origination, LST acquires these policies from originators and then sells them on to third-party investors. Ritchie I and Ritchie II are special purpose vehicles that were formed to hold life insurance policies purchased from LST, which Ritchie then planned to package into securities to sell to third-party investors. Pursuant to the Purchase Agreements, Ritchie purchased in excess of 1,000 life insurance policies from LST between July 2005 and the end of September 2006. LST acquired all of the life insurance policies it sold to Ritchie from Coventry First.

In July 2005, the NYAG served a subpoena on Coventry First requesting an array of documents relevant to an investigation by the NYAG into the life settlement industry. In March 2006, the NYAG served a second subpoena on Coventry First, posing interrogatories to Coventry First, each of which focused on Coventry First's broker compensation practices. The cover letter to the 2006 subpoena stated that the NYAG "deem[ed] the information sought relevant and material to a confidential investigation into" life settlement industry "practices related to soliciting and providing bids" and whether those practices violated state and federal

antitrust law. App'x 1474. Over the course of the summer of 2006, Coventry First engaged with the NYAG a number of times with respect to the subpoena and the status of the overall investigation. Throughout this time, Ritchie continued to purchase life insurance policies sourced by Coventry First from LST.

On October 26, 2006, the NYAG filed a complaint (the "NYAG Action") against Coventry First alleging pervasive fraud in Coventry First's procurement practices. On November 7, 2006, Ritchie I and Ritchie II each sent notices terminating the Purchase Agreements and advising LST that Ritchie was considering it to have breached the No Proceedings Warranty. This warranty provides that:

> no action, suit or proceeding . . . [is] now pending, or to the Seller's knowledge, threatened, against or affecting the Seller or its assets or properties: . . . (b) seeking to prevent the consummation of any of the transactions contemplated by this Agreement[] or (c) seeking any determination or ruling that might materially and adversely [a]ffect the performance by the Seller of its obligations under, or the validity or enforceability of, this Agreement.
> App'x 1302.

Ritchie filed the present action on February 6, 2009, alleging that LST had breached certain provisions of the Purchase Agreements, including the No Proceedings Warranty, causing it damages in excess of four hundred million dollars.

## B. The No Proceedings Warranty

Ritchie argues, first, that the district court clearly erred by ignoring specific conversations between attorneys for Coventry First and the NYAG in determining that LST had not breached the No Proceedings Warranty. Ritchie focuses its argument on several lines of testimony in which Assistant Attorney General David Axinn testified that, around February 2006, he had a conversation about the status of the industry investigation with counsel for Coventry First and

4

informed counsel in the course of that conversation that Coventry First appeared to be involved in "potential serious wrongdoing" and that the NYAG "could very well potentially follow up with an action." App'x 876. Ritchie contends that in this communication the NYAG "threatened" an action, placing LST in breach of the No Proceedings Warranty, and that the district court clearly erred in failing to directly address the import of Axinn's testimony.[1]

In evaluating the merits of this argument, it is worth recalling that the clear error standard applies not only to a district court's decisions as to witness credibility but also to its handling of submitted evidence or the inferences it draws from the available evidence.[2] *Diesel Props*, 631 F.3d at 52. Moreover, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* So long as the available facts support the district court's interpretation, even if they might also conceivably support the contrary position, we will not overturn the considered finding of the district court.

Here, the district court drew several factual inferences from the submitted evidence that undercut the proposition that, prior to October 2006, the NYAG's investigation was anything more than ordinary course for industry-wide governmental investigations. The district court highlighted, in particular, the absence of evidence suggesting that the NYAG made clear in any of its multiple conversations with counsel for Coventry First in the spring and summer of 2006 that an action against Coventry First was in the offing. Rather, the district court pointed to substantial evidence to the contrary. In fact, Axinn himself testified to the serious efforts Coventry First made to comply with the March 2006 subpoena, and did not contradict the characterization of the NYAG's interactions with Coventry First as generally

---

[1] Ritchie does not contest the district court's conclusion that the NYAG's investigation did not itself constitute an "action, suit or proceeding" under the No Proceedings Warranty.

[2] We assume, with the parties, that the district court's decision should be reviewed for clear error.

5

non-confrontational. The district court also specifically credited the testimony of Reid Buerger, a Coventry First executive and a member of the family controlling Coventry First, that he asked the attorneys representing Coventry First in September 2006 to clarify the status of the investigation with the NYAG and that the attorneys reported back that Coventry First was neither a focus nor target of the investigation.

Ritchie points to no substantial evidence suggesting that the evidence cited by the district court did not support its conclusions regarding the status of the NYAG investigation. Instead, Ritchie argues that the district court should have given substantial weight to other pieces of evidence. But this evidence, even if given the weight Ritchie ascribes to it, merely shows that there was a serious ongoing investigation of the life settlement industry and that Coventry First, as a major participant in that industry, was a subject of that investigation. This evidence is entirely consistent with the view adopted by the district court. Certainly none of it indicates that the district court "failed to synthesize the evidence in a manner that accounts for conflicting evidence." *See Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004). Finding no clear error in the district court's factual determinations, we affirm its conclusion that LST was not in breach of the No Proceedings Warranty at any time relevant to this case and hold that the district court therefore properly entered judgment for LST on this point.[3]

## C. The Notice and Waiver Provision

At the invitation of the parties, the district court separately considered whether Ritchie had waived its claims by failing to provide the notice required under the Purchase Agreements. The Notice and Waiver Provision provides, in relevant part:

---

[3] Given this conclusion, we need not definitively construe the No Proceedings Warranty in its totality.

6

> Notwithstanding any provision of this Agreement to the contrary, if an Authorized Officer of either party has actual knowledge of any such breach, but does not deliver notice of its intention to invoke or avail itself of the remedies afforded by this Agreement with respect to such within 30 Business Days of obtaining such actual knowledge, then such breach (and all claims with respect to any resulting damages [or] losses relating thereto or arising therefrom or in connection therewith) shall have been waived by such party in all respects and such party will thereafter have no right to take any action, invoke any remedy or recover any losses or damages with respect thereto.
> App'x 1309.

The district court concluded that, by operation of this provision, Ritchie's failure to provide LST notice of breach with respect to representations and warranties other than the No Proceeding Warranty resulted in its waiver of any claim arising out of those representations and warranties. Accordingly, the district court found that entry of final judgment on all Ritchie's claims was appropriate.   Ritchie now contends that notice was excused because it would have been futile. In particular, Ritchie argues that notice was futile because LST would have been unable to replace any of the policies affected by its several alleged breaches.

Ritchie cites little case law supporting this argument.   In fact, under New York law the futility defense appears to be available only in limited cases, if at all.   *See Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 518-19 (2d Cir. 1989).   And the closely related frustration defense does not relieve a party of its contractual obligations, but rather serves only to foreclose a counterparty's insistence on satisfaction of a condition precedent where that counterparty was the cause of the non-compliance it complains of.   *See A.H.A. Gen. Constr., Inc. v. N.Y.C. Hous. Auth.*, 92 N.Y.2d 20, 31 (1998).

Granted, there is precedent for permitting a party to invoke a futility defense in the context of notice and cure provisions.   But even were the Notice and Waiver Provision here a notice and cure provision, the futility defense is availing only when the other party expressly

7

repudiates performance under the contract, or otherwise makes clear that it no longer seeks to perform its obligations. *See Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 727-28 (2d Cir. 1992). In any case, the Notice and Waiver Provision is not a notice and cure provision; rather, under this provision, the party failing to provide notice affirmatively waives all claims for damages resulting from the alleged breach if it had actual knowledge of the breach and failed to provide notice within thirty business days. It is undisputed that, as of November 2006, Ritchie knew about the NYAG Action and failed to give notice of breach with respect to any provision of the contract other than the No Proceedings Warranty. Because "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms," *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002), the district court properly relied on the Notice and Waiver Provision to enter judgment against Ritchie on all of these alternative claims.[4]

### D. The Pretrial Order

Ritchie argues, finally, that whatever the merits of LST's reliance on the Notice and Waiver Provision, the district court impermissibly ruled on Ritchie's claims that LST breached representations and warranties other than the No Proceedings Warranty because the parties had agreed to carve these claims out of the bench trial in their joint pretrial order. Rule 16(e) of the Federal Rules of Civil Procedure provides that a "court may modify the order issued after final pretrial conference only to prevent manifest injustice." At the same time, as we explained in *HBE Leasing Corp. v. Frank*, 22 F.3d 41 (2d Cir. 1994), under Rule 16, "[a] trial court is given broad discretion in managing a trial, and this discretion includes a certain amount of latitude to

---

[4] Given our resolution of this issue, we need not reach the parties' arguments with respect to the impact of the two separate amendments to each of Ritchie I and II's Intercreditor Agreements on the viability of Ritchie's claims in this case.

8

deviate from the terms of the pretrial order."[5]  *Id.* at 45.  We therefore review a district court's decision to modify a pretrial order only for abuse of discretion.  *Id.*

Upon review, we find no abuse of discretion in the district court's decision to rule on Ritchie's alternative claims of breach.   This is not a case in which the district court's previously unannounced modification of a pretrial order takes a party by surprise and effectively undermines its ability to make its case.   To the contrary, the parties specifically identified "a series of separate contractual provisions under which [Ritchie's] claim was waived" as one of the issues to be tried before the district court.   App'x 502.   The district court, in accordance with the pretrial order, allowed these defenses to be tried and then merely concluded that, once tried, the success of these defenses was also sufficient to bar Ritchie's untried claims.   To the degree that this mode of proceeding departed from the strict terms of the pretrial order, we discern no abuse of discretion in it.

\*     \*     \*

We have considered Ritchie's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[5] Stylistic changes to the relevant subsections of Rule 16 have been made since *HBE Leasing*, but these changes do not modify the essential holding of that case.   *See* Fed. R. Civ. P. 16 advisory committee's note to 2007 amendment.